NO.
12-10-00110-CR

            

IN THE COURT OF
APPEALS 

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

CARLTON
JOHNSON,                                     §                 APPEAL FROM THE
2ND

APPELLANT

 

V.                                                                         §                 JUDICIAL
DISTRICT COURT

 

THE STATE OF TEXAS,

APPELLEE                                                        §                 CHEROKEE
COUNTY, TEXAS

                                                        
                                         

MEMORANDUM OPINION

            A
jury found Appellant, Carlton Johnson, guilty of possession of cocaine with
intent to deliver, and assessed his punishment at imprisonment for forty years
and a $10,000 fine.  In thirteen issues, Appellant contends the deficient
performance of his trial counsel deprived him of his right to effective
assistance of counsel.  We reverse and remand for a new trial on punishment.

 

Background

            On
April 25, 2009, the Jacksonville Police Department was informed that Appellant had
been involved in a shooting, and that he was armed and in the KEBE Hill area of
Cherokee County in a gray vehicle.  Officers Allen and Shobert responded to the
call and located the vehicle parked at 1007 Pierce Lane in the KEBE Hill area. 
The officers approached different sides of the house and attempted to talk to
the occupants.  Allen witnessed one person kick out a window screen and flee
from the house.  The person was immediately arrested.  Then Allen saw Appellant
running from the front of the house.  Allen pursued Appellant.  Shobert joined
the chase in his patrol car and then continued the chase on foot until
Appellant surrendered.  In retracing their steps back to the patrol car,
Shobert found a bank bag where he had seen Appellant fall during his flight. 
The bag contained marijuana, cocaine, Xanax, a notebook, ammunition, scales,
plastic baggies, and razor blades.

            A
DPS chemist testified that the substances recovered from the bag tested
positive for cocaine, Xanax, and marijuana.  Randy Hatch, a thirty-eight-year
veteran in law enforcement, including five years with the Drug Enforcement
Administration (DEA), testified that the contents of the bank bag were typical
of those used in the sale of drugs.  He testified that the entries in the
notebook indicated drug sales, and that a comparison of the writing in the
notebook and Appellant’s handwriting indicated Appellant made the notebook
entries.

            During
the punishment phase, both Allen and Shobert testified that Appellant was not
peaceful or law abiding.  Shobert testified that he had had many run-ins with
Appellant.  Appellant’s counsel made no request for notice of the State’s
intent to introduce extraneous offenses, and filed no motion in limine or other
pretrial motions.  At the punishment phase, hearsay testimony admitted without
objection linked Appellant to various unadjudicated offenses, including
multiple aggravated assaults, retaliation against witnesses, and terroristic
threats.  Appellant had no felony or misdemeanor convictions and asked for
probation.  The State suggested imprisonment for thirty-five to forty years. 
The jury returned a verdict of forty years.

 

Ineffective
Assistance of Counsel

            In
thirteen issues, Appellant contends that his trial counsel’s representation was
ineffective.

Standard
of Review

            The
standard for testing claims of ineffective assistance of counsel is set out in Strickland
v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984),
and adopted for Texas constitutional claims in Hernandez v. State,
726 S.W.2d 53 (Tex. Crim. App. 1986).  To prevail on his claim of ineffective
assistance, an appellant must show that his attorney’s representation fell
below the standard of prevailing professional norms, and that there is a
reasonable probability that, but for the attorney’s deficiency, the result of
the trial would have been different.  Tong v. State, 25 S.W.3d
707, 712 (Tex. Crim. App. 2000).

            Our
review of counsel’s representation is highly deferential; we indulge a strong
presumption that counsel’s conduct falls within a range of reasonable
representation.  Strickland, 466 U.S. at 689, 104 S. Ct. at 2065;
Tong, 25 S.W.3d at 712.  This court will not second guess through
hindsight the strategy of counsel at trial, nor will the fact that another
attorney might have pursued a different course support a finding of
ineffectiveness.  Blott v. State, 588 S.W.2d 588, 592 (Tex. Crim.
App. 1979).  That another attorney, including an appellant’s counsel on appeal,
might have pursued a different course of action does not necessarily indicate
ineffective assistance.  Harner v. State, 997 S.W.2d 695, 704
(Tex. App.–Texarkana 1999, no pet.).  Any allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.  Thompson v. State, 9 S.W.3d 808, 813
(Tex. Crim. App. 1999).

            In
order to render reasonably effective assistance, an attorney must have a firm
command of the facts of the case and the governing law.  Ex parte Welborn,
785 S.W.2d 391, 393 (Tex. Crim. App. 1990); Ex parte Lilly, 656
S.W.2d 490, 493 (Tex. Crim. App. 1983).  “It may not be argued that a given
course of conduct was within the realm of trial strategy unless and until the
trial attorney has conducted the necessary legal and factual investigation
which would enable him to make an informed rational decision.”  Welborn,
785 S.W.2d at 393 (citing Ex parte Duffy, 607 S.W.2d 507, 516
(Tex. Crim. App. 1980)).

            The
record on direct appeal is normally insufficient to enable the appellate court
to determine that counsel’s representation was so deficient as to overcome the
presumption that counsel’s conduct was reasonable and professional.  Mallett
v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).  Because the trial
record was not developed for the purpose of preserving or litigating this
claim, the record almost never speaks to the considerations behind the trial
tactics the defendant’s counsel employed.  See Freeman v. State,
125 S.W.3d 505, 506-07 (Tex. Crim. App. 2003).  The Supreme Court has
concluded, however, that “[t[here may be cases in which counsel’s
ineffectiveness is so apparent from the record that appellate counsel will
consider it advisable to raise the issue on direct appeal.”   Massaro v.
United States, 538 U.S. 500, 508, 123 S. Ct. 1690, 1696, 155 L. Ed. 2d
714 (2003).  The Court went further, adding that “[t]here may be instances,
too, when obvious deficiencies in representation will be addressed by an
appellate court sua sponte.”  See id.  Even
a single error can render counsel’s representation ineffective if sufficiently
egregious and harmful to the defendant.  Murray v. Carrier, 477
U.S. 478, 496, 106 S. Ct. 2639, 2649, 91 L. Ed. 2d 397 (1986).

Applicable
Law

            Hearsay
is a statement, other than one made by the declarant while testifying at a
trial or hearing, offered in evidence to prove the truth of the matter
asserted.  Tex. R. Evid. 801(d). 
Hearsay may not be introduced directly or by inference.  Schaffer v.
State, 777 S.W.2d 111, 114-15 (Tex. Crim. App. 1989).  “[W]here there
is an inescapable conclusion that a piece of evidence is being offered to prove
statements made outside the courtroom, a party may not circumvent the hearsay
prohibition through artful questioning designed to elicit hearsay indirectly.” 
Id. at 114.  So called “backdoor” hearsay is subject to the same
rules and limitations as the classic form of hearsay.  Gilbert v. State,
874 S.W.2d 290, 295 (Tex. App.–Houston [1st Dist.] 1994, pet. ref’d).

Issue
One

            Appellant
maintains his trial counsel’s representation was constitutionally deficient because
counsel did not pose a hearsay objection to the following direct examination of
the State’s first witness:

 

Q.            Did
you decide to go and back-up Officer Allen?

 

A.            Yes.

 

Q.            Why
was that?

 

A.            It
was a call of a man with a gun and we don’t like to have a single officer show
up to a call

                Like
that?

 

Q.            Specifically,
what information when you set out to go respond or back-up Officer Allen,

                what
information did you have?

 

A.            That
the subject was … had the gun had shot, fired shot earlier in the night and it
was

                Carlton
Johnson and he was driving a gray in color, I believe, they said a four door
vehicle.

 

 

(Emphasis
added).  Appellant insists his trial counsel should have urged a hearsay
objection to the questions emphasized.

            The
State is allowed to elicit testimony to establish the course of events
explaining the officer’s presence at the scene.  Roberts v. State,
743 S.W.2d 708, 711 (Tex. App.–Houston [14th Dist.] 1987, pet. ref’d).  “The
police officer, however, should not be permitted to relate historical aspects
of the case, replete with hearsay statements in the form of complaints and reports
on grounds that [he] was entitled to tell the jury the information upon which [he]
acted.”  Schaffer, 777 S.W.2d at 114-15.

            Here,
the prosecutor asked for more than an explanation of the officer’s presence and
conduct.  The prosecutor was allowed to elicit, without objection, hearsay
testimony of an unadjudicated extraneous offense by Appellant involving a
deadly weapon.  Once in evidence without objection, the State repeatedly
solicited testimony linking Appellant to this and other shootings.  Counsel
should have urged a hearsay objection to the officer’s testimony.

Issue
Two

            Appellant
claims in this issue that his trial counsel’s failure to object to
nonresponsive answers and request an instruction to the jury to disregard the
nonresponsive portions of the testimony constituted ineffective assistance of
counsel.

            Appellant
complains that his trial counsel allowed Officer Shobert to testify in the
narrative, which included nonresponsive testimony.  For example, in response to
the prosecutor’s question, “What did you do then,” the witness responded, “I
have dealt with him [Appellant] on numerous occasions.”

            The
State suggests that if trial counsel had objected to Shobert’s narrative, the
same information would have been elicited through a series of more specific
questions and answers.  It is also possible that counsel believed the
information in Shobert’s testimony less harmful buried in a lengthy response
rather than emphasized by an objection.  On this record, we are unable to say
this was not a reasonable trial tactic.

Issue
Three

            Appellant
maintains that his counsel was ineffective in failing “to object to testimony
regarding extraneous offenses and to request a limiting instruction regarding
such testimony.”  Appellant’s complaint apparently refers to the admission into
evidence of the .22 caliber bullets found on his person and the marijuana and Xanax
found in the bank bag with the cocaine.  These offenses were inextricably
connected to Appellant’s cocaine possession.  “[T]he jury is entitled to know
all the relevant surrounding facts and circumstances of the charged offense; 
an offense is not tried in a vacuum.”  Moreno v. State, 721
S.W.2d 295, 301 (Tex. Crim. App. 1986).  Trial counsel is not ineffective for
failure to object to admissible evidence.  Cooper v. State, 707
S.W.2d 686, 689 (Tex. App.–Houston [1st Dist.] 1986, pet. ref’d).

            Trial
counsel did not object to evidence of the outstanding traffic warrants, but, in
final argument, used that evidence to provide an explanation for Appellant’s
flight from the police on the morning of his arrest.  This was a reasonable
trial strategy.

Issue
Four

            Appellant
claims his trial counsel was ineffective in allowing Officer Shobert to testify
regarding the caliber of the ammunition found in Appellant’s pocket, that the
bank bag contained narcotics, and that the scales, baggies, and razor blades
were commonly used in drug sales.  Appellant contends his trial counsel should
have conducted a voir dire examination of Shobert to test his qualifications to
express these expert opinions.

            Shobert
was a certified peace officer with the Jacksonville Police Department for over
eight years.  Challenging Shobert’s ability to recognize marijuana and .22
caliber bullets would have been senseless and dilatory.

Issue
Five

            Appellant
maintains that the State failed to provide appropriate and timely notice of the
identity of the expert witnesses before trial.  Therefore, he insists, his
trial counsel’s failure to object on this ground to the expert’s testimony was
ineffective assistance of counsel.

            The
two DPS chemists were listed in the State’s witness list with the designation
“DPS Forensics.”  The officers who testified were listed with the designation
“JPD” (Jacksonville Police Department).  The State’s witness list adequately
informed Appellant of the identity of the State’s experts.  The nature and
purpose of their testimony was entirely predictable.  There was no order under
Texas Code of Criminal Procedure Article 39.14(b) or standing agreement
requiring the State to file written notice of its experts.  Trial counsel’s
failure to object on the ground urged by Appellant cannot be considered
ineffective assistance because such an objection would have been overruled.  See
Wood v. State, 4 S.W.3d 85, 91 (Tex. App.–Fort Worth 1996, pet.
ref’d) (not ineffective assistance to forego making futile objections).

Issue
Six

            In
reference to Randy Hatch’s testimony, Appellant complains that trial counsel
“did not clearly articulate a Daubert objection so as to preserve
the point for review.”  Randy Hatch, the district attorney’s investigator,
testified that the entries in the notebook found in the same bank bag as the
drugs were “indicative of drug sales.”  Randy Hatch had thirty-eight years of experience
as a peace officer.  He had five of those years with the DEA.  Given Hatch’s
experience, a voir dire examination as to his qualifications in the area of
narcotic trafficking would have been superfluous.

            Trial
counsel did raise a timely objection to Hatch’s testimony as to handwriting and
obtained a running objection to Hatch’s entire testimony regarding
handwriting.  We can imagine no trial strategy that might explain trial
counsel’s failure to attempt to take Hatch on voir dire in order to explore his
competency to make handwriting comparisons.

Issue
Seven

            Appellant
complains that his trial counsel did not request a limiting instruction
regarding the extraneous offenses.  A limiting instruction regarding
Appellant’s possession of bullets, marijuana, and Xanax was unnecessary because
the items were closely interwoven with the charged offense and constitute same
transaction contextual evidence.  See Martin v. State, 780
S.W.2d 497, 500-01 (Tex. App.–Corpus Christi 1989, pet. ref’d) (citing Luck
v. State, 588 S.W.2d 371, 375-76 (Tex. Crim. App. 1979)).

            The
police dispatch report of Appellant’s involvement in a shooting incident was
hearsay evidence of a truly extraneous offense offered for no purpose but to
show Appellant was a bad and violent person.  In our discussion of issue one,
we concluded that trial counsel’s representation was deficient in not objecting
to this evidence.  Officer Shobert had already explained that he came to the
scene to “back-up” Officer Allen.  There was no legitimate purpose for the
further explanation pointedly elicited by the prosecutor, “[t]hat the subject
was … had the gun had shot, fired shot earlier in the night and it was Carlton
Johnson. . . .”

Issues
Eight and Nine

            In
issue eight, Appellant contends that during the punishment phase, his trial
counsel repeatedly failed to urge an objection to evidence of serious
extraneous offenses and gang membership that was subject to exclusion under the
hearsay rule.  In his ninth issue, Appellant insists his trial counsel was
derelict in failing to object to evidence of extemporaneous offenses and to
request an instruction regarding such testimony.  

            During
the punishment phase, the State called Detective Travis Cearly who had
investigated a shooting in which Jamail Bowens apparently had been the intended
target.  The following exchange occurred during direct examination:

 

Q.            And
when you spoke specifically with Whitney McClelland did you have an
opportunity to

                find
out if she had overheard any statements made by the Defendant in this case?

 

A.            Yes,
ma’am.  Whitney had been in the Lincoln Park area with her sister and another

                friend. 
It was on a Sunday.  Lincoln Park has, I think, a couple of basketball courts
and

                stuff
like that.  It’s a place where a lot of people congregate especially on Sunday

                afternoons
and Sunday evenings.  And according to my interview with her, Whitney

                heard
Carlton Johnson, the Defendant here, tell Whitney’s sister that he didn’t have
a    problem with Whitney’s brother but if he was in the car with Jamail or
Willie, speaking of      Willie Rogers, that he was going to get shot, too,
that’s what she specifically told me that      she overheard.  

 

(Emphasis
added).  Next, the prosecutor successfully attempted to explore Appellant’s
alleged gang leadership.

 

Q.            Now,
Detective Cearley, are you aware of kind of the situation of what was going on

                between
these groups over in that area at this time?

 

A.            Like
I said a few minutes ago, there has been so many cases involving Mr. Johnson
that I

                am
not sure as to specifically which one you’re talking about.  I know he was
involved in a

                rather
large ordeal which was yet another shooting that was involved directly in the

                Lincoln
Park area.

 

Q.            I
guess, Detective Cearley, what I am asking is not about a particular incident
but are you

                aware
of a feud that was going on between --

 

A.            And
I don’t know exactly what the background was behind it or why was there a feud,
but, 

                yes,
there was definite tension between, I am not going to call it the Willie Rogers
group,

                but
a group of friends that Willie Rogers and some of them hung around as well as
the

                Defendant
here.  And whatever the feud was over there was several, several incidences

                that
we had to investigate and respond to in reference specifically to shots being fired
and

                threats
being made of shooting people and things such as that.

 

 

(Emphasis
added).  Then the prosecutor again revisited Officer Cearley’s “awareness” to
reinforce Appellant’s responsibility for the assault on Jamail Bowens.

 

Q.            Okay. 
I’m going to hand you State’s Exhibit No. 14 and clarify as to

                what
that particular item is?

 

A.            This
is the recovered shell casing, spent .22 shell casing as well as what is
labeled as one

                small
lead fragment.  This was recovered at the scene of the shooting that Jamail
Bowens

                was,
I believe, operating the vehicle at the time of that shooting.

 

Q.            The
one where he was the victim in the car?

 

A.            Correct.

 

Q.            That
Mr. Johnson was shooting at him?

 

A.            Correct.

 

 

The cross
examination of Officer Cearley by Appellant’s counsel did not improve matters.

 

Q.            So
you have nothing directly linking Carlton with any of this?

 

A.            I
do have witnesses in a case that heard him – heard him make statements prior to
the

                shooting. 
There were then subsequent reports filed in reference to him making harassing             telephone
calls further stating that he was going to shoot people and/or their houses.       Then
there were subsequent witnesses that saw your client fire upon an occupied
vehicle

                wherein
shell casings were found.  And then a subsequent case where an occupied         residence
was fired upon and the shell casings from that case, the ballistics report,
came   back consistent to the case where he was seen shooting a firearm.  And
in that matter –     and in that manner is how your client was tied in with all
these cases involving gun fire.

 

 

(Emphasis
added).  During this questioning, trial counsel allowed the officer an
uninterrupted opportunity to use hearsay without objection to tie Appellant to
various assaultive offenses.  His cross examination also elicited hearsay
testimony of unadjudicated terroristic threats for the jury to consider in
assessing Appellant’s punishment.

            Next,
the State recalled Officer Price to testify as to what he had been told about
Appellant’s gang connections.

 

A.            Through
my investigation it’s my understanding that one group of individuals confronted

                another
group of individuals regarding this same feud that had been going on, a fight
was

                challenged,
and guns were withdrawn and people started shooting.

 

Q.            Were
guns drawn on both sides, I guess, of this feud?

 

A.            Yes.

 

Q.            Let’s
go back.  You’re talking about two groups feuding.  Are you familiar with the

                North
Side Bloods gang in Jacksonville?

 

A.            Yes.

 

Q.            Are
you familiar with whether or not the Defendant is a member of a gang?

 

A.            It
is my understanding that is he, the Defendant in this case, Mr. Johnson, is in
fact or did              at one time claim to be a North Side Blood, yes.

 

Q.            And
as far as the two groups, any I guess group, there is generally kind of a
leader or a head           of the group; is that correct?

 

A.            Yes.

 

Q.            And
of these two groups who were the heads of the two groups?

 

A.            Mr.
Johnson would be considered the head of his group or at least the director that
would

                make
things happen. 
On the other side would be – it was Willie Rogers and another

                individual,
but Willie Rogers was basically the shot caller for the other side.

 

Q.            Okay. 
Were you able to determine if the Defendant in this case, Mr.
Johnson, in fact had             a gun with him that day?

 

A.            Based
on eyewitnesses, yes.

 

Q.            And
were those eyewitnesses simply people involved in the case, I guess other
offenders or

                were
there any non-bias witnesses?

 

A.            Through
my investigation I did speak to individuals who were involved on the other side
of

                the
incident who advised that Mr. Johnson did, in fact, have a weapon.  I also spoke
with

                innocent bystanders
or people who were actually at the park who also said that Mr. Johnson          had
a firearm that day.

 

 

(Emphasis
added).  

            Other
than excludable hearsay, the record contains no direct or circumstantial
evidence of Appellant’s gang membership.  However, without objection, the State
elicited from Officer Price hearsay testimony (based on his “investigation” or “familiarity”)
that Appellant was not only a gang member, but the gang leader of the North
Side Bloods.  The officer’s testimony that Appellant was the leader of the
local franchise of the most notorious African-American gang in the country was
well calculated to poison the jury’s attitude toward Appellant.  Obviously
relying on hearsay, Officer Price was then allowed to testify without objection
about Appellant’s threats to retaliate against those who might be witnesses to
his crimes – crimes shown only by excludable hearsay.

 

Q.            Now,
Sergeant Price, in investigating this case did you encounter any difficulties
with the

                witnesses
wanting to come forward or give names or be formally involved in this

                investigation?

 

A.            Yes,
ma’am.  Not only did the individuals not want to give their names, some of
their

                parents
even contacted me and said I don’t want my people, I don’t want my family

                involved
in this. The reason they gave for that was fear of retaliation from Mr. Johnson

                and/or
members of his family.

 

Q.            And
was retaliation a problem in regard to Mr. Johnson and his family and all these

                incidents
that had been going on?

 

A.            Yes,
ma’am.  I worked a separate case that was directly related to this which was
a       retaliation case where Mr. Johnson’s family directly retaliated against
another young lady

                and
expressed it was for her involvement in this case.

 

Q.            When
you say involvement in this case do you mean cooperation with the police?

 

A.            Yes.

 

 

(emphasis
added).

            Trial
counsel for Appellant had a duty to object to harmful inadmissible evidence. 
Instead he repeatedly allowed the State, without objection, to use excludable
hearsay to tell the jury about extraneous unadjudicated offenses said to have
been committed by Appellant.

 

Effect
of Counsel’s Failure to Object to Hearsay

            Appellant
was eligible for probation.  In such a situation, there is no reasonable trial
strategy that would allow, without objection, hearsay testimony of multiple
extraneous and unadjudicated assaults, retaliation against witnesses, and gang
leadership of a notorious gang.  Appellant’s counsel himself, in cross
examining Officer Allen, elicited hearsay evidence of Appellant’s complicity in
several terroristic threats.

            But
for trial counsel’s failure to recognize or interpose any objection to hearsay,
it is probable that the jury would have been unable to consider almost all of
these extraneous offenses.  Appellant admitted to a probation officer that he
had used cocaine while released on bond.  There was also direct evidence that
he had hit an acquaintance with his fist.  These were the only extraneous
offenses alleged to have been committed by Appellant that were not proven by
hearsay evidence subject to exclusion.  Appellant’s counsel raised one tardy
hearsay objection during the punishment phase.  The objection was sustained,
but the damaging response was already before the jury.

            The
evidence of Appellant’s guilt was overwhelming.  Even if trial counsel’s errors
during the guilt-innocence stage of the trial can be considered so serious that
he was not functioning effectively as counsel, we conclude that Appellant has
not satisfied the second requirement of Strickland – that there
is a reasonable probability that, but for his counsel’s errors, the jury would
not have returned a guilty verdict.  See Strickland, 466 U.S. at
687, 104 S. Ct. at 2064.

            Trial
counsel’s performance at the punishment stage mandates a different result.  The
performance of Appellant’s trial counsel was not “within the range of
competence demanded of an attorney in criminal cases.”  See id. 
His repeated failure to raise valid hearsay objections to evidence of otherwise
unproven extraneous offenses “undermined the proper functioning of the
adversarial process.”  Id. 

            The
prosecution took longer in eliciting, without objection, hearsay evidence of
myriad extraneous offenses during the punishment phase than in proving the charged
offense during the guilt-innocence portion of the trial.  Appellant was
probation eligible since none of these offenses had been proven in court.  In
final argument, the prosecutor explained that Appellant had not been convicted
of any of these crimes because the victims and witnesses were “too darned
scared of him.”  The prosecutor described Appellant to the jury as not only a
drug dealer, but as a violent, gun toting gangster.  The State suggested a
sentence of thirty-five or forty years.  The jury assessed his punishment at
incarceration for forty years.  

            We
conclude that counsel’s representation was so deficient that the trial on
punishment “cannot be relied upon as having produced a just result.”  Id. 
Appellant has shown that his counsel’s representation fell below “an
objective standard of reasonableness,” and that there is a reasonable
probability that, but for the attorney’s errors, the result would have been
different.

            We
sustain Appellant’s issues eight and nine.  In view of our disposition, we need
not address Appellant’s remaining issues.  See Tex. R. App. P. 47.1.

 

Disposition

            The
judgment of the trial court is reversed with regard to punishment
and the cause remanded for a new trial on punishment.

                                                                                    

                                                                                       
BILL BASS__  

                                                                                          
Justice

 

 

 

Opinion
delivered May 11, 2011.

Panel
consisted of Worthen, C.J., Hoyle, J., and Bass, Retired J., Twelfth Court of
Appeals,

sitting
by assignment.

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)