**Affirmed and Memorandum Opinion filed September 15, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00220-CR

---

### LELAND ALAN DYKES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 208th District Court
Harris County, Texas
Trial Court Cause No. 1313034**

---

## M E M O R A N D U M   O P I N I O N

Appellant Leland Alan Dykes pleaded guilty to the first-degree felony of misapplication of fiduciary property over $200,000. *See* Tex. Penal Code Ann. § 32.45(c)(7) (Vernon Supp. 2014). The trial court sentenced appellant to 15 years' imprisonment and ordered that appellant pay restitution of $1,003,127.98 as a condition of parole. On appeal, appellant contends that: (1) his guilty plea was involuntary because it was entered as a result of trial counsel's ineffective

assistance; and (2) appellant was denied effective assistance of counsel at his sentencing hearing. We affirm.

## BACKGROUND

Appellant was indicted for misapplying funds of eight customers between June 15, 2007, and September 30, 2008, while acting as a securities broker. While represented by attorney Lisa Andrews,[1] appellant pleaded guilty to misapplication of fiduciary property without an agreed recommendation from the State regarding punishment.

The trial court held a sentencing hearing at which the State presented testimony from five of the complainants, from the State Securities Board enforcement attorney who investigated appellant's companies, and from a State Securities Board financial examiner.[2] The testimony revealed that the complainants had responded to newspaper advertisements by appellant's companies for high-interest certificates of deposit. Altogether, the complainants invested over $1.1 million with appellant's companies.[3] However, the complainants' funds were not actually invested in certificates of deposit, and it appears that approximately half of the funds were never invested at all.[4] Moreover,

---

[1] Andrews was the second attorney to represent appellant.

[2] The defense presented appellant, and also called three other witnesses in addition to appellant: appellant's associate pastor and a former subordinate were called as character witnesses, and a co-investor in one of the companies where appellant invested some of the complainants' money was called to testify concerning the nature of that investment.

[3] Appellant served as director for the relevant companies, and had sole access to the company accounts where the complainants' funds were deposited.

[4] Evidence was presented that some of the complainants' funds were used to make an unsecured loan to a startup drilling company that had never produced a profit and subsequently went bankrupt. Some of the funds were distributed to other investors who were not complainants in this case. Other funds were transferred to appellant's personal bank account and used for appellant's personal expenditures, including the purchase of appellant's house and car, living expenses, and legal fees.

and contrary to assertions made by appellant's companies, the few investments actually made were not insured.

Although interest payments were made to several of the complainants, no principal was ever returned, resulting in a collective loss of more than $1 million among the eight complainants. Appellant's only proposed plan for restitution to the complainants was to sell his house — which he predicted would raise approximately $100,000 — and to try to get a job to pay the balance.

The State requested that the trial court sentence appellant to 45 years' imprisonment; the defense requested that appellant receive deferred adjudication or probation. The trial court sentenced appellant to 15 years' imprisonment, and ordered that appellant pay restitution of $1,003,127.98 as a condition of parole.

Appellant, represented by different counsel, filed a motion for new trial alleging ineffective assistance by Andrews. The trial court denied appellant's motion, and subsequently made findings of fact and conclusions of law. This appeal followed.

## STANDARD OF REVIEW

Appellant presented his ineffective-assistance claim to the trial court in a motion for new trial, which the trial court denied. We therefore analyze the ineffective-assistance-of-counsel claim as a challenge to the denial of appellant's motion for new trial, which we review for an abuse of discretion. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004), *superseded in part on other grounds by* Tex. R. App. P. 21.8(b), *as recognized in State v. Herndon*, 215 S.W.3d 901, 905 n.5 (Tex. Crim. App. 2007). We view the evidence in the light most favorable to the ruling, and will reverse only if the trial court's decision is arbitrary or unreasonable. *Id.*

3

On appeal, appellant contends that: (1) his guilty plea was involuntary because it was entered as a result of trial counsel's ineffective assistance; and (2) appellant was denied effective assistance of counsel at his sentencing hearing. Both issues involve a claim of ineffective assistance of counsel; therefore, we discuss the general ineffective-assistance standard, and also discuss how that law specifically relates to a claim that counsel's advice to plead guilty is based on an unreasonable pre-trial investigation.

To prevail on a claim of ineffective assistance of counsel, appellant must show that: (1) appellant's counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985) (noting that, although *Strickland* involved an ineffective-assistance claim in a sentencing proceeding, *Strickland*'s two-prong test equally applies to guilty pleas based on ineffective assistance of counsel). A guilty plea is not voluntary if made as a result of ineffective assistance of counsel. *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980); *Starz v. State*, 309 S.W.3d 110, 118 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

Regarding the first prong, appellant must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687; *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). Counsel has a duty to provide advice to the client about what plea to enter, and that advice should be informed by an adequate investigation of the facts or based on a reasonable decision that such an investigation was unnecessary. *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010). "In any ineffectiveness case, a particular decision not to investigate must be

4

directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

Regarding the second prong, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Id.* Appellant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694; *Perez*, 310 S.W.3d at 893. "[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill*, 474 U.S. at 59; *see also Ex parte Briggs*, 187 S.W.3d 458, 469 (Tex. Crim. App. 2005). This, in turn, "will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill*, 474 U.S. at 59; *Briggs*, 187 S.W.3d at 469.

APPLICATION

## A.    Appellant's Guilty Plea

In his first issue, appellant contends that his guilty plea was not voluntary and knowing because it was entered on the advice of Andrews, and the advice, appellant contends, was based on an unreasonable and inadequate pre-trial investigation. Appellant contends that, but for counsel's advice, he would not have pleaded guilty.

Appellant lists a myriad of alleged failures by Andrews. Specifically relevant to appellant's claim that Andrews conducted an unreasonable pre-trial investigation, appellant contends that:  (1) Andrews admitted that she was not

prepared to try the case on the trial date; (2) Andrews conducted only a very limited investigation into Bill Moore, appellant's salesman who signed up the complainants with appellant's companies, and whom appellant claimed was really running the company; (3) Andrews failed to adequately investigate a potential defense of mistake of fact — specifically, that appellant believed his firm was covered by insurance; (4) Andrews failed to sufficiently investigate the financial records, even though her forensic fraud examiner suggested she do so; (5) when appellant was unable to arrange funding to hire a replacement forensic fraud examiner after the previous examiner returned to the district attorney's office, Andrews did not seek funding from the trial court even though appellant may have been entitled to such funding; (6) Andrews never interviewed any of the State's witnesses prior to the trial date; and (7) Andrews never contacted the chief executive officer of the startup drilling company where appellant invested some of the complainants' funds to "determine whether this money was invested in the good faith belief" that the company was going to hit oil.

At the hearing on appellant's motion for new trial, appellant's new counsel called Andrews as a witness. Andrews testified that appellant's only defense at trial would have been that appellant did not personally meet with any of the complainants or make any representations to any complainants, but that it was instead appellant's salesman Bill Moore who met with the complainants, and appellant relied on Moore to "take care of the things that were represented to the complainants in the contracts." Andrews testified that she developed this defense by talking with appellant. However, after speaking with other witnesses, Andrews came to believe that, "even if we could damage Mr. Moore on cross[,] [it] was still going to paint a picture of a fairly close relationship between [appellant] and Mr. Moore such that a jury wouldn't believe that [appellant] had no knowledge of what

6

Mr. Moore was doing." Andrews also noted that, after reviewing the documents, it became clear that the problem with appellant's defense was that appellant was "the one who handled all of the money, not Mr. Moore." Moreover, Andrews testified that certain documents contradicted appellant's claim that he had no knowledge of the representations made to the complainants by Moore. Accordingly, Andrews conducted online research regarding Moore, but she did not intend to call Moore as a witness and, therefore, did not attempt to contact Moore or conduct further investigation concerning Moore.

Andrews further testified that she hired a forensic fraud examiner. The fraud examiner reviewed the State's file and prepared a detailed report of his findings. After the fraud examiner accepted employment with the district attorney's office and ceased working on appellant's case, Andrews did not hire a second forensic fraud examiner, in part because appellant could not come up with funding to do so. Andrews testified that she considered going to the trial court to request funding from the court, but ultimately decided not to do so as a strategic decision, believing it would hurt the defense's ability to argue to the court that appellant could pay restitution if appellant had to request expert witness retention funds from the court as an indigent defendant. Andrews also stated that she did not hire a second examiner to further investigate the financial documents because "the more [she] looked at the state's case, [she] did not think tracing the money was as important in [appellant's] case. It wasn't a theft case. [She] didn't think tracing the different amounts of money was as important at that point because it was an issue of whether or not [appellant] had a fiduciary duty to these complainants in the representations that were made to them."

Andrews testified that she reviewed the State's extensive file, spoke with six witnesses, and reviewed boxes of documents that appellant provided. Andrews

7

also testified that she had at least three in-person meetings with appellant before his plea, including one that lasted several hours, and that Andrews had "many conversations [with appellant] about the strengths and the weaknesses of the state's case versus his case and his evidence." Andrews stated that she spoke with the prosecutors regarding the case on many occasions. Andrews testified that she conducted research regarding misapplication of fiduciary property, but that she did not research the potential defense of mistake of fact because she did not believe such a defense "was going to be very credible."

Andrews testified that she never contacted the CEO of the startup drilling company, but that the issue of whether appellant invested the complainants' money in the startup in good faith did not go to appellant's guilt or innocence on the misapplication-of-fiduciary-property charge because such an investment was not what had been advertised to the complainants.

Finally, Andrews testified that based upon her research and investigation concerning the law and the facts, her experience as a prosecutor and a defense lawyer, and her belief that appellant likely would face a significant prison sentence should the case be tried to a jury presented with elderly complainants who had lost retirement savings, she advised appellant to plead guilty.

After hearing Andrews's testimony, the trial court denied appellant's motion for new trial. At appellant's request, the trial court issued findings of fact and conclusions of law. Specifically, the trial court found, in relevant part, that: Andrews was not prepared to go to trial because, based on her experience with the court, she did not believe trial would go forward on the trial date; Andrews reviewed the State's file; Andrews met with appellant numerous times and spoke with him over the phone on many occasions while the case was pending to discuss aspects of his case, including all of his options; Andrews asked appellant on

8

numerous occasions before the case was set for trial to produce any evidence to contradict the State's theory of the case, but appellant never provided any such evidence to her in any form, including identifying witnesses; Andrews believed that, based upon her review of the evidence, a defensive theory of mistake of fact probably would not be a credible or persuasive defensive theory with a jury; Andrews believed a jury would convict appellant of misapplication of fiduciary property based upon her review of the evidence and her experience as a trial lawyer; and, before entering his guilty plea, appellant met with Andrews and together they discussed the ramifications of pleading guilty and went over the plea papers and the admonishment form, which reflected the full range of punishment and appellant's right to trial by jury.

The trial court concluded that appellant's guilty plea was knowingly, freely and voluntarily made; that it was not outside the range of competence demanded of attorneys in criminal cases for Andrews to have advised appellant to plead guilty and opt for the court to determine punishment; that such advice was sound trial strategy; and that Andrews's performance was not deficient.

Although appellant contends that Andrews's advice was "erroneous" and "inaccurate," appellant does not identify how Andrews's advice was legally incorrect. *See, e.g., Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999) (where counsel provided incorrect advice concerning whether defendant's sentences would run consecutively or concurrently, such advice constituted ineffective assistance of counsel). Nor has appellant demonstrated that the alleged defense of mistake-of-fact was a viable one,[5] or that Andrews failed to uncover any

---

[5] Appellant was charged with misapplication of fiduciary property. *See* Tex. Penal Code Ann. § 32.45. A person commits the offense of misapplication of fiduciary property if "he intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary . . . in a manner that involves substantial risk of loss to the owner of the property or to a person for whose

9

other viable defense. *See, e.g.*, *Ex parte Imoudu*, 284 S.W.3d 866, 870 (Tex. Crim. App. 2009) (concluding counsel had a duty to investigate a possible insanity defense where several individuals had expressed concern regarding defendant's mental state and defendant acted erratically when attorneys met with him); *Briggs*, 187 S.W.3d at 468-69 (concluding counsel was ineffective where counsel failed to seek funds from trial court to hire an expert witness to present a clearly evident viable defense that defendant's actions did not cause her son's death). Rather, appellant's contention is, in essence, that Andrews did not perform a reasonable pre-trial investigation, and that her advice that appellant plead guilty was therefore deficient.

Viewing the evidence in the light most favorable to the trial court's denial of appellant's motion for new trial, we do not conclude that the trial court's decision was arbitrary or unreasonable. Andrews made her recommendation that appellant plead guilty after reviewing the voluminous file, discussing the case extensively with appellant, speaking with several witnesses, reviewing a detailed report by a forensic fraud examiner, and reviewing relevant case law on the charge against appellant. While Andrews could have done more, we cannot say based upon the record before us that her pre-trial investigation was inadequate or unreasonable. *See, e.g.*, *Standerford v. State*, 928 S.W.2d 688, 698 (Tex. App.—Fort Worth 1996, no pet.) ("That counsel *could* have done more does not mean that his performance fell below a minimum level of competence.") (emphasis in original).

---

benefit the property is held." *Id.* § 32.45(b). "'Misapply' means deal with property contrary to . . . an agreement under which the fiduciary holds the property . . . ." *Id.* § 32.45(a)(2). Appellant does not dispute that he had a fiduciary relationship with the complainants, nor does he dispute that the complainants entered into agreements with his company whereby their funds were to be invested. Appellant's alleged mistake-of-fact defense — that he believed the portion of the funds he invested were insured — does not overcome the fact that approximately half of the funds were never invested at all or that appellant used more than $200,000 of the complainants' funds for personal expenses.

Similarly, "applying a heavy measure of deference" to Andrews's decision not to investigate certain potential defenses or interview the State's witnesses or other potential witnesses, we cannot say those decisions were unreasonable considering that, based upon a reasonable review of the facts, such investigation was unlikely to be of assistance to appellant's defense. *See Strickland*, 466 U.S. at 691; *Parker v. State*, 462 S.W.3d 559, 564 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (viewed under the "strong presumption that [counsel's] conduct falls within the wide range of reasonable professional assistance," appellant failed to establish that counsel's investigation was unreasonable).

Additionally, appellant has not demonstrated a reasonable probability that, but for Andrews's alleged failure to investigate, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694; *Perez*, 310 S.W.3d at 893. Further investigation concerning appellant's alleged mistake-of-fact defense — that he believed certain investments to be insured — would not have helped appellant, as the uncontroverted evidence at trial established that approximately half of the funds in appellant's care were never invested at all. Likewise, no investigation into Moore would have changed the fact that it was ultimately appellant's duty to properly invest the complainants' funds, and appellant had sole access to the company accounts where the complainants' funds were deposited. Nor has appellant presented any evidence on appeal that would have potentially changed the outcome at trial had Andrews discovered it through a more thorough investigation. *See Cooks v. State*, 240 S.W.3d 906, 912 (Tex. Crim. App. 2007) (appellant did not demonstrate prejudice where no showing was made regarding what evidence a proper investigation would have revealed); *Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) ("A claim for ineffective assistance based on trial counsel's general failure to investigate the

11

facts of the case fails absent a showing of what the investigation would have revealed that reasonably could have changed the result of the case. Likewise, a claim for ineffective assistance based on trial counsel's failure to interview a witness cannot succeed absent a showing of what the interview would have revealed that reasonably could have changed the result of the case.") (citation omitted). Accordingly, we conclude that appellant has failed to establish that he suffered any prejudice as a result of Andrews's alleged ineffective assistance. *See, e.g.*, *Ex parte Martinez*, 195 S.W.3d 713, 722 (Tex. Crim. App. 2006) (where evidence showed that appellant was aware his conduct was wrong, counsel was not ineffective for failing to investigate or present a defense of voluntary intoxication, which requires that the individual be unable to understand the wrongfulness of the conduct); *Ex parte Lilly*, 656 S.W.2d 490, 493 (Tex. Crim. App. 1983) (counsel's failure to investigate the facts of a case constitutes ineffectiveness if the result is that any *viable* defense was not advanced); *Stokes*, 298 S.W.3d at 432.

We conclude that Andrews's advice that appellant plead guilty did not constitute ineffective assistance of counsel. Moreover, we conclude that appellant has not demonstrated that the outcome of the proceeding would have been different had Andrews conducted additional investigation prior to making her recommendation that appellant plead guilty. Appellant's first issue is overruled.

## B.     Counsel's Representation At The Punishment Hearing

In his second issue, appellant contends that he was denied effective assistance of counsel at his sentencing hearing because Andrews failed to elicit evidence from appellant that he was truly remorseful and that he had a plan to make restitution to the complainants. Appellant contends that these failures prejudiced appellant because they "clearly impacted the trial court's determination to assess a 15-year prison sentence instead of probation."

12

During the sentencing hearing, Andrews specifically asked appellant, "What would you say to those Complainants that lost their money in your company?" Appellant replied, "Well, I don't like to lose at anything, and I feel very bad about the losses that these people have experienced. And, I tried to go in to look at other things to be able to come in and pick up where we left off, to be able to make these people whole and to be able to take care of them. Uh, some of the things were due and some weren't, but I have never quit trying to take care of the obligations and take care of what these people have. It just hasn't happened."

Additionally, the trial court told appellant, "I don't see any good faith on your part, or remorse for what you've done." The court then asked appellant if he had anything to say before the court pronounced its sentence, and appellant replied, "Yes, I do have remorse. *I was asked on the witness stand about remorse, and yes, I have great remorse.*" Based on the foregoing, we conclude that Andrews attempted to elicit a notion of remorse from appellant. Appellant's failure to express that remorse convincingly is not the fault of his counsel.

Regarding appellant's claim that Andrews failed to present a plan for restitution to the trial court, the following discussion took place at the sentencing hearing:

> [ANDREWS:] In an attempt to raise some of the money -- uh -- have you done some things since you pled guilty?
>
> [APPELLANT:] Yes. Uh, one of the things I'm doing is selling my house, which I will offer those funds, plus some other funds -- uh -- that I can create -- uh -- from working -- uh -- to go back towards -- uh -- reimbursement to the -- uh -- investors.
>
> [ANDREWS:] Approximately how much money might you be able to offer them as restitution from the sale of your home?
>
> [APPELLANT:] Uh, I'm looking at probably a hundred thousand dollars.

[ANDREWS:] Additionally, if the Judge sees fit to give you probation, would you be able to, or do you intend to, go out and get a job?

[APPELLANT:] Definitely.

[ANDREWS:] Would you make every effort to continue and try and make as much restitution as you could?

[APPELLANT:] Yes, I would.

Additionally, Andrews testified at the hearing on appellant's motion for new trial that she had specifically told appellant on many occasions that his house was "his vehicle for restitution and his only asset," and that selling the house was his "biggest and best evidence" to convince the court to sentence appellant to deferred adjudication. However, despite numerous continuances of the trial setting and the passing of more than five months between appellant's guilty plea and the sentencing hearing, appellant still had not finalized the sale of his house by the date of the sentencing hearing. Instead, appellant attempted to offer five blank checks from the alleged purchaser of his home. Appellant claimed the checks were valid for $20,000 each (for a total of $100,000), but stated that only $20,000 of the funds were immediately available and that the remainder would be available in the coming months. Andrews testified that she had instructed appellant to bring checks that were filled out by the maker, but that appellant "was concerned that he didn't want to pony-up the money if he wasn't going to get probation, so he didn't want to actually give the money up-front until he knew he was getting probation."

We conclude that Andrews attempted to present a restitution plan for appellant to the trial court, but that appellant's actions prevented her from effectively doing so. Moreover, we note that the trial court was well within its

14

discretion to disregard appellant's offer of $100,000 in restitution at the hearing on the motion for new trial as too little, too late.[6]

Accordingly, because Andrews reasonably attempted to elicit appellant's expression of remorse and to present a plan for appellant to make restitution, we conclude that appellant received effective assistance of counsel at his punishment hearing. Appellant's second issue is overruled.

### CONCLUSION

We conclude that appellant has not established ineffective assistance of counsel. Accordingly, we affirm the trial court's judgment.


/s/    William J. Boyce
        Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally.
Do Not Publish — Tex. R. App. P. 47.2(b).

---

[6] This is especially true considering the trial court heard testimony that appellant's reported income the year before was $60,000, making any plan for real restitution to the complainants rather implausible.