

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. WR-89,032-01

---

### EX PARTE JOHN DEWAYNE WESTERMAN, Applicant

---

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 27595A IN THE 249TH DISTRICT COURT
### FROM JOHNSON COUNTY

---

YEARY, J., filed a dissenting opinion in which SLAUGHTER, J., joined and in which KELLER, P.J., joined as to parts I–III.

### DISSENTING OPINION

It appears there is no limit on how long a defendant can wait before bringing an unverified claim that his counsel was ineffective. Even twenty-eight years later, even after his counsel has died and can no longer respond, even if plausible arguments can be made about how counsel's actions may not amount to ineffective assistance, there is no bar to pursuing—and obtaining—relief. Instead of prohibiting Applicant from litigating his claims under the doctrine of laches, the Court permits a great expenditure of judicial resources in order to deliver Applicant the relief he seeks, all while casting aside a plausible argument for

trial counsel's alleged misconduct,[1] Applicant's tremendous delay in bringing his claim, and the impossibility of ascertaining trial counsel's account of what transpired. The Court grants Applicant relief from his 1990 aggravated robbery conviction based on his claim that his plea was involuntary because of an impermissible enhancement paragraph that increased the minimum number of years he faced in prison. I would deny Applicant relief on the basis of laches. For these and other reasons, I respectfully dissent to the Court's granting of relief.

## I.

In 1984, Applicant was charged with burglary of a building, pled guilty, and was sentenced to confinement for eight years. His sentence was then probated. In 1986, Applicant violated the terms of his probation and his prison sentence was imposed, but the trial court thereafter placed Applicant on shock probation. Four years later, in 1990, Applicant was arrested and charged with aggravated robbery, a first degree felony, which is the subject of this writ.

Applicant's shock probation for burglary was not revoked prior to the filing of his

---

[1] *See Ex parte Miller*, 330 S.W.3d 610, 616 (Tex. Crim. App. 2009) ("Courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' and that 'the challenged action "might be considered sound trial strategy."' . . . When the record contains no evidence of the reasoning behind counsel's actions, a court normally cannot conclude that counsel's performance was deficient.") (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)); *see also Garcia v. State*, 57 S.W.3d 436, 440 (Tex Crim. App. 2001)("[I]n the absence of evidence of counsel's reasons for the challenged conduct, an appellate court 'commonly will assume a strategic motivation if any can possibly be imagined,' and will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it.") (quoting 3 W. LaFave, et al., CRIMINAL PROCEDURE § 11.10(c) (2d. ed 1999)).

1990 aggravated robbery charge.[2] Nevertheless, the State used the 1984 burglary conviction to enhance Applicant's range of punishment in his robbery case from a minimum of five years to a minimum of fifteen years. Applicant ultimately accepted a thirty-year offer and pled guilty to the 1990 robbery offense. Now, nearly twenty-nine years later, Applicant claims that he would not have pled guilty and accepted the State's thirty-year offer had he known that the punishment range actually should have been a minimum of five years instead of a minimum of fifteen years.

The Court today holds that, because Applicant's shock probation was not revoked until after Applicant pled guilty to the robbery charge, his punishment range for the robbery charge was improperly enhanced, making his plea involuntary. Because of the unique posture of this case, and because of the timing of its presentation, I do not agree with the Court's disposition.

## II.

As I have stated before in previous separate opinions, it is a defendant's responsibility—through his counsel—to investigate and become aware of factors that would weigh in favor of a lower sentence. *See Ex parte Pue,* 552 S.W.3d 226, 243 (Tex. Crim. App.

---

[2] The State did revoke Applicant's probation in the burglary case eight days after he pled guilty to the aggravated robbery case. But the State did not revoke the probation before it used that offense to enhance the punishment range in the robbery case. *See* TEX. PENAL CODE § 12.42(c) (1990) ("If it be shown on the trial of a first-degree felony that the defendant has been once before convicted of any felony, on conviction he shall be punished by confinement . . . for any term of not . . . less than 15 years.")

2018) (Yeary, J., dissenting) ("The system does not expect the trial court to monitor the adequacy or finality of the prior convictions alleged to enhance [a sentence] in order to ensure its own authority to impose a sentence within an enhanced range. The onus is instead placed on the defense to investigate the legitimacy of the State's enhancement counts, and to call any apparent deficiencies to the trial court's attention."). A defendant's failure to raise improper-enhancement claims at trial means that those claims should not be cognizable on habeas. *See Ex parte Clay*, 539 S.W.3d 285, 287 (Tex. Crim. App. 2018) (Yeary, J., dissenting) ("It thus appears that the principle that an 'illegal sentence' may be raised 'at any time,' regardless of whether there was a contemporaneous objection lodged at trial, does not apply with respect to improper-enhancement claims—or at least not *all* (and maybe not even *most*) improper-enhancement claims.").

However, a defense lawyer's failure to recognize that a sentence is being improperly enhanced—because, for example, the enhancing offense was not final—may present an applicant with grounds to assert an ineffective assistance of counsel claim or an involuntary plea claim on post-conviction habeas corpus. *See Ex parte Lilly*, 656 S.W.2d 490, 493 (Tex. Crim. App. 1983) ("It is fundamental that an attorney must have a firm command of the facts of the case as well as the law before he can render reasonably effective assistance of counsel.").

**III.**

Just two years after Applicant pled guilty to the 1990 aggravated robbery offense, we

explained, in *Ex parte Langley*, that a conviction in which a defendant is placed on shock probation is treated no differently than any other conviction that results in the imposition of probation—the conviction is not final for enhancement purposes unless the probation is revoked. 833 S.W.2d 141, 143 (Tex. Crim. App. 1992). What is more, we went on to determine that a defense attorney's failure to recognize that un-revoked shock probation renders a conviction not final for enhancement purposes may amount to ineffective assistance of counsel. *See id.* ("Even though the order granting 'shock' probation may, or may not, have been included in the pen packet purportedly introduced by the state at the trial on the merits, the fact that applicant was either still on probation or had successfully completed his probation at the time of trial would have been easily discovered by the most cursory investigation. . . . We conclude that applicant was denied effective assistance of counsel in the punishment phase . . . when trial counsel failed to adequately investigate his prior conviction and discover that applicant had been granted 'shock' probation which had not been revoked.").

Even with this in mind, it is not entirely clear that Applicant's trial counsel was ineffective. To be sure, an argument could be made that Applicant's trial counsel should have discovered—with even "the most cursory investigation"—that Applicant was placed on shock probation for the 1984 burglary offense, and that his probation had not been revoked before the 1990 aggravated robbery charge. *Id.* And upon making this discovery, Applicant's trial counsel could have objected to the State's use of the 1984 burglary offense to enhance

Applicant's punishment range in his 1990 aggravated robbery case.

But we really do not know that Applicant's counsel *did not* discover that Applicant's probation for the burglary offense had not been revoked. In fact, he may have known. A plausible counter-argument exists that Applicant and his counsel may have decided to forgo objecting to the improper enhancement paragraph for the sake of efficiency, because the revocation of Applicant's probation was inevitable in light of the first-degree aggravated robbery charge. Counsel may very well have identified the defect in the enhancement paragraph, realized that the revocation of Applicant's probation was imminent, and counseled his client to forgo any complaint about the enhancement paragraph in the interest of reaching a swift end to the proceedings and to allow Applicant to begin serving his agreed-to sentence. Further, the possibility that this was indeed a legitimate trial strategy is bolstered by the fact that the State actually revoked Applicant's probation eight days after the plea to the robbery case was finalized.

Counsel may also have been concerned that raising an objection to the enhancement paragraph might jeopardize Applicant's thirty-year plea offer. Or, counsel may have recognized that Applicant faced a maximum sentence of life in prison on the first-degree aggravated robbery charge, and that, even were he to succeed in causing a removal of the enhancement paragraph, a trial and subsequent sentencing might very well result in a sentence of at least, or even potentially much higher than, thirty years. But because Applicant's trial counsel appears to now be deceased, and because Applicant did not file his

writ application in this case until twenty-eight years after pleading guilty, determining—at this late date—whether there was a legitimate strategy and whether counsel provided ineffective assistance is nearly, if not entirely, impossible.

In its findings of fact and conclusions of law, the trial court concluded that laches did not bar Applicant's claims. Even though the State cannot presently locate Applicant's file, Applicant gave a new confession to the district attorney's office, and for this reason, the trial court found that the State is not prejudiced in its ability to re-prosecute Applicant. *See Ex parte Saenz*, 491 S.W.3d 819, 826 (Tex. Crim. App. 2016) ("In general, the doctrine of laches is intended to address the broader interests of the criminal-justice system, such as prejudice to the State's ability to prosecute a defendant or to respond to allegations due to the loss of evidence[.]"). Applicant's willingness to provide a new confession does, as the trial court concluded, address one interest that the doctrine of laches seeks to protect—the State's ability to re-prosecute Applicant. But there are equally important interests that Applicant's new confession does not address.

One of the interests that the doctrine of laches seeks to protect, but that the trial court's findings do not address, is the State's ability to respond to Applicant's claims in his habeas corpus application. *See Ex parte Perez*, 398 S.W.3d 206, 213 (Tex. Crim. App. 2013) (discussing that one of the original aims of laches was to address the State's "prejudice in its ability to respond to the claims raised in an application") (citing *Ex parte Carrio,* 992 S.W.2d 486, 487–88 (Tex. Crim. App. 1999)). In determining whether the State is prejudiced in its

ability to respond to an applicant's claims on habeas corpus, we have said that courts may "broadly consider the diminished memories of trial participants[,] . . . which may often be said to occur beyond five years after a conviction becomes final." *Id.* at 216. In Applicant's case, over twenty-eight years have passed since he pled guilty to the 1990 robbery case. It is likely that the trial participants' memories are diminished due to the significant passage of time from the plea negotiations to Applicant's filing of this writ. Indeed, because of the great length of time that has passed since the offense, the only thing the 1990 robbery victim can recall about the incident was that the perpetrator had pantyhose over his face. In fact, evidence in the habeas record suggests that there may not be anyone other than Applicant who is able to testify today about what occurred during Applicant's 1990 plea negotiations.[3]

We have also said that laches may be invoked in circumstances in which "participants in the trial are dead[.]" *Id.* at 211 (quoting *Ex parte Carrio,* 992 S.W.2d at 487–88). The record before us does not state that Applicant's trial counsel from 1990 is deceased, but the State Bar of Texas website indicates that he is deceased.[4] Regardless of the status of

---

[3] At the habeas hearing, before habeas counsel asked Applicant about conversations Applicant had with his 1990 trial counsel, the following exchange occurred:

> Q [Habeas Counsel]: Okay. Now, here is where only you can testify to this because you're the only one that was involved back in 1990 who is still here. You understand there is a different prosecuting attorney; I'm a different defense attorney. We weren't part of those negotiations. Okay. Do you understand that?
>
> A [Applicant]: Yes, sir.

[4] *See Maddox v. State*, 591 S.W.2d 898, 900 (Tex. Crim. App. 1979) (concluding from an examination of the Texas Legal Directory that an attorney named George I. Middaugh had a listed

Applicant's 1990 trial counsel, there is no testimony or affidavit in the record from counsel and, even if counsel were in fact alive, it is highly unlikely that he would be able to provide accurate testimony about what occurred in Applicant's plea proceeding nearly twenty-nine years ago. As a result, we are left only with Applicant's testimony that he would not have accepted the State's thirty-year offer if he knew the range of punishment he faced was five years to life instead of fifteen years to life.

It is true that the State does not object to granting Applicant relief in this case. Indeed, the record reflects that the State and Applicant have reached a new agreement in which Applicant will plead guilty for time served. As a result, the State does not raise a laches objection to Applicant's claims. But we have said that courts may *sua sponte* consider whether laches should bar an application for the writ of habeas corpus. *Ex parte Smith*, 444 S.W.3d 661, 667 (Tex. Crim. App. 2014) ("For the same reasons that we abandoned the federal approach to laches, we now hold that a court may *sua sponte* consider and determine whether laches should bar relief."). After all, there are additional interests that the doctrine of laches protects that extend beyond any interest that the State's prosecutors may claim in a given case. In particular, we have said that the interest of the "judicial system and society generally" justify a court *sua sponte* raising laches when the parties do not. *See id.* ("When a court is called upon to issue equitable relief, the State's failure to formally plead laches does not restrict a court's ability to balance equities beyond those that the parties advocate.

address in Cuero, DeWitt County).

A court may consider *sua sponte* the interests of the judicial system and society generally because they implicate values that may stretch beyond the concerns of the parties. Permitting courts to freely inquire about an applicant's delay broadly effectuates the maxim that 'he who seeks equity must do equity.'"). One interest that society and the judicial system undoubtably share is the proper adjudication of cases under the law. In order to satisfy that interest, courts must have facts, not merely the agreement of the parties. Here, because Applicant's trial counsel is unavailable, we are unable to determine with any real confidence the facts surrounding the plea negotiations in Applicant's case that are necessary to resolve the claims raised in his application. As a result, and due to Applicant's nearly twenty-nine year delay in seeking relief, the doctrine of laches should bar Applicant's ineffective assistance of counsel claim.

Applicant's second ground for relief—that his plea was involuntary—is inseparably tied to his ineffective assistance of counsel claim. Applicant argues that his plea was involuntary because he did not have accurate information from his attorney when he made his decision to plead guilty and accept the State's thirty-year offer. He claims that his trial counsel erroneously informed him that he faced a minimum of fifteen years in prison. As a result, Applicant argues that his plea was not voluntary. But once again, because Applicant's trial counsel appears to now be deceased, there is no response to Applicant's claim that trial counsel erroneously informed him of the minimum sentence. Under these circumstances, we cannot determine with any real confidence whether Applicant's involuntary plea claim is

meritorious. Consequently, the doctrine of laches should bar Applicant's involuntary plea claim in the same way that it should bar his ineffective assistance of counsel claim.

**IV.**

There is still yet another aspect of the posture of this case that troubles me. By granting the relief Applicant requested, we place him in the same position he was in when he accepted the State's thirty-year offer in 1990. Only now, because the offense previously—and arguably improperly—used to enhance Applicant's punishment has now become final, there exists a plausible argument that his aggravated robbery charge might *properly* be subject to the enhancement. The State could argue that it should be able to prosecute Applicant for the 1990 aggravated robbery, properly enhanced by his 1984 burglary conviction, since that 1984 conviction became final on May 22, 1990.

I recognize that this Court has previously held that "[i]t is settled that the burden is on the State to make a prima facie showing that any prior conviction alleged for enhancement, or for punishing an accused as a repeat offender, became final before the *commission* of the primary offense[.]" *Diremiggio v. State*, 637 S.W.2d 926, 928 (Tex. Crim. App. [Panel Op.] 1982) (emphasis added). The Court in *Diremiggio* proclaimed this final-before-commission requirement in Section12.42(c) to be "settled[.]" But while this may be our "settled" interpretation of the statute, I believe the Court's previous construction bears further scrutiny.

In *Diremiggio,* the Court relied on *Johnson v. State*, 583 S.W.2d 399 (Tex. Crim. App. [Panel Op.] 1979), a repeat offender case in which we held that "[t]he proof was adequate

to show the prior conviction was final before the commission of the present offense." 583 S.W.2d at 403. In reaching that conclusion, however, the *Johnson* court did not cite any case that reached the same conclusion in the context of a Section 12.42(c) enhancement. The only case the Court cited relating to the sequential order of the enhancements was a 1975 case, *Ashley v. State*, 527 S.W.2d 302 (Tex. Crim. App. 1975). But *Ashley* construed Section 12.42(d)—an entirely different subsection that addresses habitual offender enhancement. Section 12.42(d) requires that, for habitual status to be imposed, the State must prove the defendant has been convicted of two prior felonies, and the second felony must have "occurred subsequent to the first previous conviction having become final"—a requirement notably absent from Section 12.42(c). TEX. PENAL CODE §12.42(d).

So, where did this requirement—that a prior conviction become final before the *commission* of the offense to be enhanced—come from? It appears to me that the principle, that enhancing prior convictions must be final before the defendant *committed* the offense the State is attempting to enhance, is rooted in case law from 1871 that relied entirely on foreign law. In that year, the Supreme Court of Texas (the only appellate court in Texas at that time), without providing any rationale other than pointing out that other states have statutes that *expressly* contain such a requirement, proclaimed that the language in Texas's enhancement statute required that the "subsequent offense shall be committed after the conviction of the former[.]" *Long v. State*, 36 Tex. 6, 8 (1871). In reaching this conclusion, the Supreme Court of Texas admitted that the statute "does not say in express terms" that the

subsequent offense must be committed after the previous offense results in a conviction, but nevertheless held that the "language clearly implies" such a conclusion. *Id.* In support of this conclusion, the Court stated that "many of the codes of different states declare in *express* terms" that the punishment may be enhanced only if "the subsequent offense was committed after the conviction of the former offense." *Id.* at 9 (emphasis added). But, as the dissenting opinion in *Long* pointed out, "it is the duty of this court to decide cases according to the plain import of the laws of THIS State and not according to the laws of any other state, or the decisions of any court upon laws foreign to this State[.]" *Id.* at 11 (Ogden, J., dissenting) (emphasis in original).

In 1904, this Court followed the Supreme Court of Texas's decision in *Long,* and held that the 1895 Texas Penal Code required that prior "convictions all occurred . . . prior to the commission of the offense for which" the defendant is being tried. *Kinney v. State*, 45 Tex. Cr. R. 500, 503, 79 S.W. 570, 571 (1904). The 1895 Penal Code contained much of the same language found in today's Section 12.42. Notably, the enhancement provisions in Articles 1014 and 1015 of the 1895 Penal Code all included the same opening clause found in the enhancement paragraphs in Section 12.42: "If it be shown on the trial of a . . . ."[5] But, there

---

[5] Articles 1014 and 1015 of the 1895 Penal Code read:

Article 1014. If it be shown on the trial of a misdemeanor that the defendant has been once before convicted of the same offense, he shall, on a second conviction, receive double the punishment prescribed for such offense in ordinary cases, and upon a third, or any subsequent conviction for the same offense, the punishment shall be increased, so as not to exceed four times the penalty in ordinary cases.

was no mention in the 1895 Penal Code of the requirement that prior offenses alleged for enhancement must have resulted in a conviction before the commission of the new offense. Instead, the statutes required only that it be shown "on the trial" of the new offense, that the defendant has been previously convicted. Thus, the conviction-before-commission rule established by the courts prior to the adoption of the 1974 Penal Code appears to be a requirement that was created out of whole cloth from the Supreme Court of Texas's opinion in *Long* and this Court's construction of the 1895 Penal Code in *Kinney*—not a requirement in the plain language of the statute itself.

This Court's 1984 *Diremiggio* opinion cited another case, *Tinney v. State*, 578 S.W.2d 137 (Tex. Crim. App. [Panel Op.] 1979), which is an opinion that construed only Section 12.42(d), and held that a second enhancing felony had to occur subsequent to the first enhancing felony becoming final. But *Tinney* did not speak to whether the felony the defendant is on trial for must have been committed after the second enhancing felony became final. 578 S.W.2d at 139. Nevertheless, this court has subsequently read into Section 12.42(d) a requirement that the felony on trial must have been committed after the second enhancing

---

Art. 1015. If it be shown, on the trial of a felony less than capital, that the defendant has been before convicted of the same offense, or one of the same nature, the punishment on such second or other subsequent conviction shall be the highest which is affixed to the commission of such offenses in ordinary cases.

P.C. arts. 1014 & 1015 (1895).

felony became final.[6] *Tomlin v. State,* 722 S.W.2d 702, 705 (Tex. Crim. App. 1987).

In *Tomlin*, this Court prescribed the procedure to follow in the habitual offender context under Section12.42(d): "The sequence of events must be proved as follows: (1) the first conviction becomes final; (2) the offense leading to a later conviction is committed; (3) the later conviction becomes final; (4) the offense for which defendant presently stands accused is committed." *Id*. Then, more recently, we reaffirmed this sequence in *Jordan v. State*, 256 S.W.3d 286, 290–91 (Tex. Crim. App. 2008). Therefore, this construction is this Court's prevailing interpretation of Section 12.42(d).

What is more, we have continued to uncritically import this court-made requirement into Section 12.42(c). However, this requirement does not exist in the plain language of either Section 12.42(c) or in 12.42(d) with respect to the relationship between the offense on trial and the second enhancing felony. Nothing in Section 12.42(d) requires that "the offense for which defendant presently stands accused" must be committed after the second (more

---

[6] The requirement that a conviction must become *final* before it may be used as an enhancing conviction was not conceived through legislative enactment until 1974 for Section 12.42(d) (the habitual enhancement provision), and not until 2011 for Section 12.42(c) (the repeat-offender enhancement provision). *See* Act of May 24, 1973, 63rd Leg., R.S., ch. 399 § 1, sec. 12.42(d), 1973 Tex. Gen. Laws 883, 908 (showing enactment of the 1974 Penal Code); Act of May 25, 2011, 82nd Leg., R.S., ch. 834 § 3, sec. 12.42(c)(1), 2011 Tex. Gen. Laws 2104, 2105 (showing the 2011 amendment adding the finality of conviction language to Section 12.42(c)). Nonetheless, this Court has read—despite the former absence of such language in the statute indicating this was the Legislature's intent—a finality requirement, through the statute's use of the word "conviction," for enhancement purposes. *See Arbuckle v. State*, 105 S.W.2d 219, 219 (Tex. Crim. App. 1937) ("Before a prior conviction may be relied on to enhance the punishment in a subsequent case such prior conviction must be final.") (citing *Brittian v. State*, 214 S.W.351, 352 (Tex. Crim. App. 1919) (holding that convictions used to enhance "must be legal[,] and finally dispose of the case under which such convictions were secured")).

recent) enhancing conviction becomes final. *Tomlin,* 722 S.W.2d at 705. This requirement is entirely the product of corruptions imposed by case law dating at least back to the foreign-law-based 1871 Supreme Court of Texas opinion, *Long*, and our subsequent construction of the 1895 Penal Code in *Kinney. Long*, 36 Tex. at 8; *Kinney*, 79 S.W. at 571. Still, this Court has not explained why such a questionable construction of Section 12.42(d) should be imported into Section 12.42(c), so as to require that an enhancing offense in the repeat offender context must be final before the commission of the new felony offense. Because this Court has relied on case law construing Section 12.42(d) to construe Section 12.42(c)—and it has not conducted its own exegesis of Section 12.42(c), or explained the genesis of our construction in *Diremiggio*—the proper interpretation of Section 12.42(c) is, as far as I am concerned, an issue this Court should revisit.

Perhaps an argument could be made that since *Long* and *Kinney* were decided, the Legislature has never amended the statute to do away with the entirely court-invented requirement that, in the enhancing context, all prior felonies must be final before the next felony is committed. *Long*, 36 Tex. at 8; *Kinney*, 79 S.W. at 571. But when the Legislature adopted the 1974 Texas Penal Code, it conspicuously included the requirement in Section 12.42(d) that "the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final[.]" TEX. PENAL CODE 12.42(d). In adopting the 1974 Penal Code, the Legislature codified *in part* what we had said in opinions addressing enhancement provisions in the period of time after *Long* and *Kinney*,

but prior to the adoption of that code. *See Ellis v. State,* 115 S.W.2d 660, 662 (Tex. Crim. App. 1938) ("[A]ppellant's main complaint directed at that part of the indictment charging prior convictions is that there is omission of the averment that each succeeding offense was committed after conviction of the preceding offense. We are of opinion that this complaint is well taken[.]"); *Gammill v. State*, 117 S.W.2d 790, 791 (Tex. Crim. App 1940) ("Appellant attacks that part of the indictment alleging the prior convictions on the ground that there is omission of the averment that each succeeding offense was committed after conviction of the preceding offense. This complaint is well founded."). The Legislature was thus well aware of how to incorporate such a requirement into the Penal Code—and was aware of our construction of previous enhancement provisions—yet it conspicuously left out that requirement in Section 12.42(c) when it adopted the 1974 Penal Code.

So, should we follow this precedent even though it is manifestly in conflict with the language the Texas Legislature adopted in the statute? In my view, a strong argument can be made that we should not. When Texas courts recognize that we have overstepped the constitutional mandate in Article II of our Texas Constitution and have become legislators ourselves, we should acknowledge our fault, and step rightly back to our place. *See* TEX. CONST. art. II ("The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these

departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."). This is especially true when it appears that what led us to this error was a heightened focus on foreign law to the derogation of our own State's legislative prerogative—as appears to have occurred in *Long* in 1871.

When we focus on the *plain language* of Section 12.42(c)—"if it is shown on the trial of a felony of the first degree that the defendant has previously been finally convicted of a felony . . ."—the word "previously" does not appear to relate back to the commission of the new offense. TEX. PENAL CODE § 12.42(c). Instead, "previously" seems to indicate only that the defendant must have been finally convicted of a felony before the inception of the trial for the new felony offense. *Id.* So long as the first felony conviction is final before the State brings the prosecution in the new felony, Section 12.42(c) seems on its face to suggest that the first felony conviction may be used to enhance the new felony that is on trial, even if the new felony on trial was committed before the first conviction became final. Indeed, Section 12.42(c) itself never speaks to the commission of any offense at all.

This being the case, if we were to read Section 12.42(c) according to its plain language, the State would be able to once again enhance Applicant's punishment because the 1984 burglary charge became final on May 22, 1990. As a result, even if Applicant's trial counsel was ineffective for failing to object to the enhancement paragraph during the 1990 plea negotiations, Applicant would be unable to show that he was prejudiced by the ineffective representation, because Applicant would now be in the same position that he was

in when his counsel did not object during the plea proceedings. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("[T]he defendant must show that [counsel's] deficient performance prejudiced the defense.").

## V.

In my opinion, we have already expended far too much of the state's scarce judicial resources on this case. I cannot join the Court's decision granting relief in this case where so much inexcusable delay has occurred, where the true facts about the entry of the plea cannot reliably be ascertained, and where a proper construction of our laws would be likely only to put Applicant back into the same position he now seeks relief from. I respectfully dissent.

FILED:          April 10, 2019
PUBLISH