**Ex parte Edmond LILLY, Jr.**

**No. 69126.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 14, 1983.

Gary Trichter, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Roberto Gutierrez, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

This is a post-conviction application for a writ of habeas corpus under the provisions of Art. 11.07, V.A.C.C.P. In a trial before the court on April 4, 1972, appellant was convicted of theft, and punishment, enhanced pursuant to Article 63, V.A.P.C. (1925), was assessed at life. On direct appeal, the Court affirmed the judgment of conviction in an unpublished opinion. This is applicant's fifth state-court post-conviction application for a writ of habeas corpus. The first application was dismissed because applicant's direct appeal was pending; the next two were denied without written order; and the fourth was dismissed because of a pending federal writ of habeas corpus. The federal writ was dismissed because of failure to exhaust state remedies. Prior to its dismissal, however, on September 22, 1980, an evidentiary hearing was held in the United States District Court, Southern District of Texas. C.C. Divine, applicant's trial counsel, was the only witness.[1] The transcript from that evidentiary hearing is before us now.

Applicant, in the instant application, alleges essentially the same grounds of error alleged in both his fourth state court application and his federal writ of habeas corpus: that he received ineffective assistance of counsel at trial.

The record[2] reflects that applicant was arrested for the August 25, 1970, theft of $640.00 in cash from Joseph Montalbo. On November 16, 1970, applicant was accorded a state examining trial. He was represented at the examining trial by Clyde Gordon. Applicant was indicted for the theft, with allegations of two prior convictions, on May

---

1. Divine died on April 21, 1981.

2. The pertinent records include applicant's trial transcript, which was included in his record on direct appeal, and the transcript of Divine's testimony during the federal evidentiary hearing, which was included in the record of applicant's fourth application.

19, 1971. Gordon filed a motion on August 5, 1971, requesting that a reasonable bail be set for applicant. The motion, however, was presented to the court on December 2, 1971, by C.C. Divine. Divine later testified that he was retained by applicant solely to represent him at the bond hearing. After the bond hearing, Divine no longer considered himself applicant's attorney in this matter and did not, as far as he could remember, go up to the jail to see applicant at any time.[3]

On April 4, 1972, Divine was called by the trial court and told to appear to represent applicant at trial. Twenty minutes later, Divine presented himself to the court and advised the judge that he was not representing applicant, that he had not been employed, and that he was unprepared to go to trial. The judge instructed Divine and applicant to appear immediately before an annex court judge for trial. Although this conversation was not recorded by a court reporter, a court reporter was present when Divine made his announcement of not ready on the same date before the annex court judge. The following exchange occurred at that time:

"THE COURT: In Cause No. 163,686, the State of Texas versus Edmond Lilly, Jr., I believe the State announced ready. Has the defendant announced ready?

DIVINE: No sir. *We are not ready. We have no notice to file but we are not ready.*

THE COURT: You are employed on this case?

DIVINE: Yes, sir.[4]

THE COURT: There being no motion filed except the one that I ruled on, the Court will ask both sides to go to trial.

Does either side want a jury?

COLLINS: No sir. The defendant waived the right to a jury and asked to

be tried before the court. Is that right, Mr. Divine?

DIVINE: That's right.

THE COURT: Both sides are ready to proceed?

COLLINS: The State is ready, Your Honor.

DIVINE: *We are not ready, Your Honor, but if you say go to trial, we will go."* (Emphasis added)

The State called four witnesses in the case-in-chief. William, Kathryn, and Joseph Montalbano all testified that they were working in the family store on the date of the offense when their employee, Charles Crockett, informed them that the applicant had taken a stack of money from behind the counter. Although none of the Montalbanos witnessed the theft, both William and Joseph identified applicant as the man who was in the store at the time of the offense. Crockett testified that he saw the applicant reach over the counter, grab the money, and put it in a paper sack. When confronted by Crockett, the applicant dropped the bag and left the store. Crockett retrieved the money and informed the Montalbanos of the incident.

After the State presented its evidence, the Court recessed until 9:00 a.m. of the next day. At that time, applicant, in his case-in-chief, recalled Crockett in an apparent effort to establish that applicant had voluntarily returned the money.

The trial court found applicant guilty. Divine then presented a written motion to limit applicant's punishment pursuant to Art. 1424, V.A.P.C. (1925), because of the "voluntary return" of the property. The trial court denied applicant's motion, found the enhancement allegations to be true, and assessed applicant's punishment at life. Another attorney, Don Hecker, represented applicant at the sentencing.

---

3. According to Divine, he had represented applicant in other matters prior to this offense. When applicant called him prior to the bond hearing and asked him to appear at the hearing, Divine did so without ever interviewing the applicant.

4. Divine testified that he had not been appointed to represent applicant because "When they appoint you, under the law of the State of Texas, you are allowed ten days in which to prepare. He refused to appoint me because I would have claimed my ten days." See Art. 26.04, V.A.C.C.P.

To test the adequacy of representation afforded an accused by retained or appointed counsel, the standard to be used is "reasonably effective assistance of counsel." *Ex Parte Duffy,* 607 S.W.2d 507 (Tex. Cr.App.1980). It is fundamental that an attorney must have a firm command of the facts of the case as well as the law before he can render reasonably effective assistance of counsel. *Ex Parte Ybarra,* 629 S.W.2d 943 (Tex.Cr.App.1982); *Duffy,* supra; *Flores v. State,* 576 S.W.2d 632 (Tex. Cr.App.1978). A natural consequence of this notion is that counsel also has a responsibility to seek out and interview potential witnesses and failure to do so is to be ineffective, if not incompetent, where the result is that any viable defense available to the accused is not advanced. *Ybarra,* supra; *Duffy,* supra. As the Supreme Court recognized in *Powell v. Alabama,* 287 U.S. 45, 58, 53 S.Ct. 55, 60, 77 L.Ed.2d 158 (1932),

> "It is not enough to assume that counsel thus precipitated into the case thought there was no defense, and exercised their best judgment in proceeding to trial without preparation. Neither they nor the court could say what a prompt and thoroughgoing investigation might disclose as to the facts. No attempt was made to investigate."

The record in this case shows that at the time of the trial, Divine knew nothing of the facts of the case, had not consulted with applicant about the case, did not review the prosecuting attorney's file, and had done no independent investigation nor preparation for trial. Since he had less than five minutes to prepare for trial, Divine was unable to investigate the scene of the offense, interview and investigate the State's witnesses, or properly review the enhancement paragraphs.

The trial transcript reinforces Divine's testimony that he was totally unfamiliar with the facts. During the trial, Divine asked Crockett, the only eyewitness to the offense, to spell his name because "I wanted to make sure I had it correct.... I didn't know his name." Divine was unaware until it was developed during his cross-examination of Crockett that there had been an examining trial during which Crockett had testified. Only then did he request a copy of the examining trial transcript to review. His lack of familiarity with the scene of the offense led to a series of confusing questions which prompted Crockett to remark "You don't understand the way the store is made. Where he took the money, it is out on the sidewalk. It is not inside the store." In addition, it was only during his questioning of Crockett that Divine learned that the applicant and a "Reverend Jarvin" had approached Crockett after the offense but before the examining trial to ask Crockett to sign an affidavit stating that he had made a mistake in identity. Divine had no idea that the applicant had identified himself to Crockett prior to any formal identification procedure. Furthermore, applicant was charged under Art. 63, V.A.P.C. (1925), and thus was faced with an automatic life sentence. Yet Divine did not investigate the prior convictions for any possible defects.

For whatever reason, whether through the trial court's error in ordering him to proceed or his own error in failing to properly request a continuance, Divine was completely unprepared to defend applicant against the serious charge he was facing. His lack of preparation rendered him unable to adequately challenge the witnesses' identification of applicant. He had no knowledge of the scene of the offense or of whether the witness' version of the offense was even physically possible. He had made no investigation into the character of the only witness to the offense. This is particularly important considering that Crockett's testimony was the only evidence showing that an offense had even occurred since the money was never removed from the store and there was no other evidence presented that the money had been appropriated. None of the witnesses who testified were interviewed by Divine prior to trial. In fact, no attempt was made by Divine to locate any of the other customers who were present at the time.

In applying the reasonable effective assistance standard to the facts here, we must conclude that applicant was denied the effective assistance of counsel. *Ybarra, supra.*

Habeas corpus relief granted.

CAMPBELL, J., not participating.