**Opinion filed May 23, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00269-CR

_____

## DAKOTA BEAL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause No. B-22-0438-CR**

## M E M O R A N D U M   O P I N I O N

Appellant, Dakota Beal, was charged by indictment with online solicitation of a minor, a second-degree felony, and possession of four grams or more but less than two hundred grams of methamphetamine with intent to deliver, a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.112(a), (d) (West Supp.

2023); TEX. PENAL CODE ANN. § 33.021(c), (f) (West Supp. 2023). A jury found Appellant guilty of both offenses. The trial court assessed his punishment at twenty years' confinement in the Correctional Institutions Division of the Texas Department of Criminal Justice for each offense and ordered the sentences to run concurrently. *See* PENAL § 12.31 (West 2019). Appellant raises four issues on appeal, arguing that: (1) the trial court erroneously denied his motion to inspect, examine, and independently test physical evidence; (2) he received ineffective assistance of counsel; (3) the evidence is insufficient to sustain his conviction for online solicitation of a minor; and (4) the trial court abused its discretion by ordering Appellant to pay restitution to the Texas Department of Public Safety. We modify and affirm.

*Factual Background*

Special Agent Erich Whaples with the Texas Department of Public Safety was working a human trafficking operation in January of 2022. As part of this operation, he set up a "bait account" on MeetMe, a dating website, and waited for individuals to make contact. Agent Whaples' MeetMe profile identified him as an adult female named "Mary J."

On the afternoon of January 12, 2022, Appellant, using his own MeetMe account complete with his photograph, began messaging "Mary J." They exchanged phone numbers, and Appellant texted "Mary J." around 7:00 p.m. offering to pick her up. "Mary J." immediately confessed to Appellant that she was fourteen years old.[1] Appellant, undeterred, continued the conversation:

        [Appellant]: O ok lol.

---

[1]The text message Agent Whaples wrote read: "im 14 but also 15." He clarified that he meant to type "almost" instead of "also." Whether Appellant believed he was texting with a fifteen-year-old rather than a fourteen-year-old is inconsequential.

[Appellant]: Do you have any pics

[Whaples]: What kind of pics do you want

[Appellant]: Whatever you send

[Whaples]: are you going to tell that im 14? or can you keep a secret?

. . .

[Appellant]: Sexy pics and yea I can

After Agent Whaples sent Appellant a photograph of a young girl fully clothed, Appellant replied: "Got any naked pics?" "Mary J." provided excuses for not sending nudes: "thats how we get caught tho," "any pic I send goes to my moms phone," and "ive never done this before." However, due to Appellant's persistence, Agent Whaples finally sent two more photographs of what appeared to be a teenage girl in athletic shorts and a sports bra. In response to the first photograph, Appellant sent "Mary J." a photograph of an erect penis.

He also told "Mary J." that he was seventeen—eight years younger than his actual age—and suggested that they sneak out together to "have sex." After planning to meet in a middle school parking lot, Appellant asked "Mary J." if he could "stick it in [her] butt" so she "can't get pregnant."

Law enforcement stopped Appellant's vehicle after he drove around the middle school three times looking for "Mary J." During an inventory search of his vehicle, police found two baggies of a crystalized substance, which was later confirmed through laboratory testing to be over six grams of methamphetamine. Officers were also able to confirm from Appellant's cell phone that he was the person who had been communicating with "Mary J."

Appellant was charged with online solicitation of a minor and possession of a controlled substance with intent to deliver. A jury found him guilty of both offenses,

3

and the trial court sentenced him to confinement in the Correctional Institutions Division of the Texas Department of Criminal Justice for a period of twenty years on each conviction, to run concurrently. Appellant filed a motion for new trial, which alleged that the trial court should have considered "additional mitigation information" prior to sentencing; Appellant did not allege any issue regarding Appellant's election of sentencing by the trial court, rather than the jury, in his motion or that material evidence favorable to him had been discovered since trial. *See* TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2018). The motion was overruled by operation of law. *See* TEX. R. APP. P. 21.8(c).

On appeal, Appellant disputes the sufficiency of the evidence that he knew he was communicating with a minor. He also asserts that his trial counsel was ineffective for failing to file a written election to have the jury assess his punishment, that the trial court erroneously denied his motion to inspect and independently test certain evidence, and that the trial court abused its discretion by ordering him to pay restitution to the Texas Department of Public Safety.

*Sufficiency of the Evidence*

We first address Appellant's third issue, in which he contends that the evidence is insufficient to sustain his conviction for online solicitation of a minor. According to Appellant, the evidence failed to show that he "believed that he was soliciting a minor."

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any

4

rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Garcia v. State*, 667 S.W.3d 756, 761 (Tex. Crim. App. 2023).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Lee v. State*, 676 S.W.3d 912, 915 (Tex. App.—Eastland 2023, no pet.). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *See* CRIM. PROC. art. 36.13 (West 2007); *Garcia*, 667 S.W.3d at 762 ("a reviewing court does not sit as a thirteenth juror and may not substitute its judgment for that of the factfinder by reevaluating the weight and credibility of the evidence"). "This familiar standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Garcia*, 667 S.W.3d at 761 (quoting *Jackson*, 443 U.S. at 319). Therefore, if the record supports conflicting inferences, we presume the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Garcia*, 667 S.W.3d at 762.

We treat direct and circumstantial evidence equally under this standard. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Ruiz v. State*, 631 S.W.3d 841, 851 (Tex. App.—Eastland 2021, pet. ref'd). It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish the defendant's guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)); *Lee*, 676 S.W.3d at 915. Each fact need not point directly

and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, we may not use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Rather, we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

Finally, we measure the sufficiency of the evidence by the elements of the charged offense as defined by the hypothetically correct jury charge for the case. *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016); *see also Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In this regard, to determine whether the State has met its burden under *Jackson* to prove a defendant's guilt beyond a reasonable doubt, we compare the elements of the offense to the evidence adduced at trial. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik*, 953 S.W.2d at 240). The hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

A person commits the offense of online solicitation of a minor:

> [I]f the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

PENAL § 33.021(c). The term "minor" includes "an individual whom the actor *believes* to be younger than 17 years of age." *Id.* § 33.021(a)(1)(B) (emphasis

6

added).  "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist."  *Id.* § 6.03(b).

The gravamen of the offense under subsection (c) is the knowing solicitation of a minor to meet a person, with the intent that the minor will engage in some form of sexual contact with that person or another.  *Smith v. State*, 631 S.W.3d 484, 492 (Tex. App.—Eastland 2021, no pet.) (citing *Ganung v. State*, 502 S.W.3d 825, 828–29 (Tex. App.—Beaumont 2016, no pet.)).  The offense is complete at the time of the solicitation, and the requisite intent arises within the conduct of soliciting. *McLeod v. State*, No. 14-22-00684-CR, 2023 WL 8263659, at *7 (Tex. App.—Houston [14th Dist.] Nov. 30, 2023, pet. ref'd) (citing *Ex parte Lo*, 424 SW.3d 10, 22–23 (Tex. Crim. App. 2013)).  Intent may be inferred from circumstantial evidence, including the acts, words, and conduct of the defendant.  *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

In this case, the indictment alleges that Appellant knowingly solicited Erich Whaples, the complainant, "a minor," "over text message or other electronic message service" with the intent that the complainant would engage in sexual contact or sexual intercourse with Appellant.  Appellant does not dispute that he initiated the online contact with Agent Whaples through MeetMe, believing him to be "Mary J." He also does not contest that he was soliciting sex from "Mary J.," whose MeetMe profile represented her age as over eighteen years old.  Rather, he argues that "[t]here was nothing presented by the State" to prove that their conversation "was not constitutionally-covered 'age-play.'"  The defense of engaging in online role playing or "fantasy" between two consenting adults "constitutes no more than a negation of an essential element"—the accused's belief of the other person's minority—that the

7

State must prove beyond a reasonable doubt. *See Geisberg v. State*, 984 S.W.2d 245, 246–47 (Tex. Crim. App. 1998); *State v. Paquette*, 487 S.W.3d 286, 290 (Tex. App.—Beaumont 2016, no pet.). The State was not required to disprove fantasy or "age-play" if the evidence demonstrated Appellant's *belief* that he was communicating with a minor. *See Geisberg*, 984 S.W.2d at 246–47.

The jury was presented with text messages between Appellant and "Mary J." wherein Appellant was told twice that "Mary J." was fourteen years old. Appellant agreed to keep her age a secret and solicited nude photographs immediately thereafter. He received three photographs of what appeared to be a teenage girl purporting to be "Mary J.," was told that she was a virgin, then he asked, "do you want to change that[?]" Appellant later reiterated his intent: "I wanna have sex."

In addition to being told "Mary J.'s" age, the messages detailed her sexual inexperience, having to sneak out on a school night, and her mother monitoring her phone. The photographs Appellant received of "Mary J." depicted what could have conceivably been an underage girl. Appellant, who was twenty-five at the time of the offense, represented himself to "Mary J." as being seventeen after she revealed her minority. The jury could have inferred that Appellant lied about his age to make himself more attractive to a young teenager. *See Perales v. State*, 622 S.W.3d 575, 581–82 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd). Based on the messages between Appellant and "Mary J.," a rational jury could have logically inferred that Appellant knew he was soliciting a minor. *See, e.g.*, *Garand v. State*, No. 11-19-00043-CR, 2020 WL 7863328, at *3–4 (Tex. App.—Eastland Dec. 31, 2020, no pet.) (mem. op., not designated for publication).

Moreover, Appellant's statements and actions after the solicitation indicated a consciousness of guilt. He was stopped by police after circling the middle school

three times, refused to exit his vehicle, gripped the steering wheel, reached towards the floorboard, and had to be "forcibly removed." *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) ("Attempts to conceal incriminating evidence, inconsistent statements, and implausible explanations to the police are probative of wrongful conduct and are also circumstances of guilt.").

Appellant acknowledged during his recorded interview with Special Agent Michelle Wilson that "Mary J." told him she was fourteen or fifteen, and that he discussed having sex with her. Appellant submitted that "the only other time" he conversed with a minor on social media, he "did not talk to [her] anymore" after she revealed her age, thereby implying his knowledge of "Mary J.'s" minority.

Appellant admitted to making a "stupid decision," and would "apologize" to "Mary J." because "she is a little girl." He expressed remorse and admitted that he "knew what [he] was doing was wrong." Despite that "it felt wrong," Appellant nevertheless arrived at a middle school to meet a fourteen-year-old girl from whom he had solicited sexual intercourse. Appellant's post-arrest statements to police therefore support the jury's finding of guilt.

Additionally, at the conclusion of his interview, Appellant made a call to his common law wife, Jessica Bills, and told her: "I made a major mistake. I talked to somebody else, I went to meet up with her, and she was not of age." As Bills began to cry, Appellant attempted to comfort her: "This is the first time that anything like this has ever happened." Appellant also wrote to Bills from jail, explaining that he initially believed he was speaking to a twenty-five-year-old, then "said thats [sic] nasty and wrong and stopped talking to her" after learning she was a minor. As such, the jury could have reasonably inferred that these actions showed a consciousness of guilt, and an admission that he knew "Mary J." was a minor. *See Balderas v.*

9

*State*, 517 S.W.3d 756, 767 & n.16 (Tex. Crim. App. 2016); *State v. Villegas*, 506 S.W.3d 717, 749 (Tex. App.—El Paso 2016, pet. dism'd) ("Any conduct on the part of a person accused of a crime subsequent to its commission that indicates a consciousness of guilt may be received as a circumstance tending to prove that he committed the act with which he is charged.").

The evidence offered at trial establishes that the jury could have reasonably believed that Appellant had the requisite *mens rea* to commit the offense of online solicitation of a minor under Section 33.021(c) of the Penal Code. The text messages, Appellant's behavior, the statements he made during his recorded interview, and his correspondence from jail to Bills refute his suggestion on appeal that he could have been engaging in fantasy or "age-play." *See Garand*, 2020 WL 7863328, at *3–4. Considering all the evidence in the light most favorable to the verdict, a rational jury could have logically inferred and found beyond a reasonable doubt that Appellant solicited to meet "Mary J." with the intent of engaging in sexual contact, believing that she was under seventeen. Accordingly, we overrule Appellant's third issue.

### Ineffective Assistance of Counsel

Appellant contends in his second issue that he was denied effective assistance of counsel during his trial because counsel failed to timely file a written motion electing that the jury assess his punishment.

To prevail on claim of ineffective assistance of counsel, an appellant must establish that: (1) his trial counsel rendered deficient performance in that it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ex*

10

*parte Lane*, 670 S.W.3d 662, 671 (Tex. Crim. App. 2023). "Failure to succeed on either prong is fatal to the ineffectiveness claim." *Lane*, 670 S.W.3d at 671.

An attorney is deficient if his performance falls below an objective standard of reasonableness under the prevailing professional norms, considering the facts of the case viewed from counsel's perspective at the time of the representation. *Id.* (citing *Strickland*, 466 U.S. at 687–88, 690). "There is 'a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023) (quoting *Strickland*, 466 U.S. at 689). Counsel's actions are deficient only if the reviewing court finds that "no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id.* (quoting *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011)).

"Claims of ineffective assistance must be firmly rooted in the record." *Id.* at 782. "Under most circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional." *Id.* (quoting *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004)).

Appellant's ineffective-assistance claim rests on his trial counsel's failure to timely file a written election to have the jury assess his punishment. During the State's voir dire, the prosecuting attorney asked to approach the bench, and the following exchange occurred:

11

[THE STATE]: Your Honor, there is not an election as to punishment that has been made. I don't think that we have to talk about punishment.

[TRIAL COUNSEL #1]: We are electing for the jury punishment, Your Honor. If we don't . . . doesn't it automatically go to the jury?

. . . .

[TRIAL COUNSEL #2]: It automatically goes to the jury unless you waive it.

[TRIAL COUNSEL #1]: We have asked for a jury trial. I think it is clear that we want a trial.

The trial court explained to trial counsel that, according to Article 37.07, Section 2(b) of the Code of Criminal Procedure, the judge assesses the defendant's punishment unless the defendant elects, in writing, for the jury to assess punishment. *See* CRIM. PROC. art. 37.07 § 2(b) (West Supp. 2023). Counsel then requested leave to file a late election, but the State objected.[2] *See id.* ("If a finding of guilty is returned, the defendant may, with the consent of the attorney for the state, change

---

[2]We note that, prior to its objection, the State twice indicated to the venire panel that the jury would assess Appellant's punishment. The State then chose to oppose Appellant's untimely request for the jury to assess his punishment even after making these jury assertions and in the face of trial counsel's clear and uncontested statements that she misunderstood the well-established law. While we understand that the State was not required to consent—we note that Appellant's untimely request arose very early in the trial proceedings and before his trial counsel had even begun her voir dire examination—and it is well-settled that it is the "primary duty of all prosecuting attorneys . . . to see that justice is done." CRIM. PROC. art. 2.01 (West 2015); *Berger v. U.S.*, 295 U.S. 78, 88 (1935).

This type of dilemma might potentially be avoided *altogether* by trial courts adopting a regular practice of reviewing with the parties the defendant's punishment election decision *before* the State's voir dire commences. For instance, if the trial court had noticed that a written punishment election was not filed by Appellant before the commencement of that stage of the proceedings, it could have inquired and asked Appellant's trial counsel if Appellant intended to file a written punishment election. Such an inquiry could have provided an opportunity for (1) the trial court to clarify and correct any misunderstanding by trial counsel of the required procedure for, and the consequences of, making an informed punishment election and (2) trial counsel to discuss the punishment election options with Appellant.

his election of one who assesses the punishment."). The trial court stated that it did not "believe [it had] authority to allow [trial counsel] to file it now," declined to rule, stating "[t]here is nothing to rule on[,]" and allowed voir dire to proceed without any discussion of the punishment ranges.[3]

"It is fundamental that an attorney must have a firm command of the facts of the case as well as the law before he can render reasonably effective assistance of counsel." *Lane*, 670 S.W.3d at 671 (quoting *Ex parte Lilly*, 656 S.W.2d 490, 493 (Tex. Crim. App. 1983)). Counsel is thus charged with making an independent legal and factual investigation of the case. *Id*. "Further, 'a lawyer must be sufficiently abreast of developments in criminal law aspects implicated in the case at hand.'" *Id.* (quoting *Ex parte Williams*, 753 S.W.2d 695, 698 (Tex. Crim. App. 1988)). "Ignorance of well-defined general laws, statutes and legal propositions is not excusable and such ignorance may lead to a finding of constitutionally deficient assistance of counsel." *Id.* (quoting *Ex parte Chandler*, 182 S.W.3d 350, 358 (Tex. Crim. App. 2005)).

Here, counsel's failure to file a written punishment election rests upon neither tenuous nor unsettled legal footing. *Ex parte Lewis*, 537 S.W.3d 917, 923 (Tex. Crim. App. 2017). The law is and has been well-settled and clearly defined that, "if a finding of guilty is returned, it shall then be the responsibility of the judge to assess" the defendant's punishment unless the defendant elects "in writing before the commencement of the voir dire examination" to have his punishment assessed by the jury. CRIM. PROC. art. 37.07 § 2(b).

---

[3]Trial counsel did not submit a request to change Appellant's punishment election following the jury's guilty verdict.

13

In assessing whether counsel's performance fell below an objective standard of reasonableness, we must look to the record for any strategic motive for counsel's actions. *See Strickland*, 466 U.S. at 687–88; *Okonkwo v. State*, 398 S.W.3d 689, 693 (Tex. Crim. App. 2013). The case before us is a rare instance in which counsel's lack of reasonable trial strategy is "firmly rooted in the record." *Hart*, 667 S.W.3d at 781–82. Trial counsel expressed ignorance of established and fundamental principles of Texas criminal procedure and repeatedly told the trial court that she incorrectly assumed punishment would automatically be assessed by the jury. She took "full responsibility" for the failure to file a written punishment election and admitted that she "was erroneous in that regard." Counsel explained her reasoning for the alleged deficient performance as a mistaken belief and misunderstanding of the law rather than trial strategy. *See Hart*, 667 S.W.3d at 783. Therefore, trial counsel's failure to file an election for the jury to assess punishment cannot be attributed to "tactical or strategic decision-making." *See id.* at 782. Instead, it was due to ignorance of a "well considered and clearly defined" law, and thereby constitutes deficient performance. *See Chandler*, 182 S.W.3d at 358–59 (internal quotations omitted).

Having found that counsel's performance was deficient, we must next address whether Appellant was prejudiced as a result. *Strickland*, 466 U.S. at 687. Prejudice may be measured in two ways: (1) a reasonable probability of a different outcome, or (2) a reasonable probability of a different decision by the defendant. *Swinney v. State*, 663 S.W.3d 87, 90 (Tex. Crim. App. 2022) (citing *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018)). "Choosing between the two depends on the possible result of the deficient performance." *Id.* "For example, if the deficient performance pertained to a guilty verdict, then prejudice would depend on 'a

14

reasonable probability that, absent the errors, the factfinder would have a reasonable doubt respecting guilt.'" *Id.* (quoting *Strickland*, 466 U.S. at 695). "If the deficient performance pertained to punishment, then prejudice would depend on a reasonable probability that the sentencer would have assessed a more lenient punishment absent the errors." *Id.* "But if the deficient performance might have caused the defendant to waive a proceeding he was otherwise entitled to, then a reasonable probability that the deficient performance caused the waiver fulfills the prejudice requirement." *Id.* (citing *Lee v. U.S.*, 582 U.S. 357 (2017)). "In that situation, the focus is on the defendant's decision making." *Id.*; *see Ex parte Walker*, 794 S.W.2d 36, 37 (Tex. Crim. App. 1990) (failure "to carry out *the defendant's decision* to have a jury assess punishment" may constitute a denial of effective assistance) (emphasis added).

The record is silent regarding whether Appellant wished that his punishment be assessed by the jury, rather than the trial court, and whether counsel advised him of his right to elect the jury, whether he wished to invoke that right, and whether he relied on trial counsel to assert that right.[4] While his trial counsel generally stated that "[we] have asked for a jury trial[,] I think it is clear that we want a trial," and "our intent is to have a full trial on the merits in front of a jury," neither attorney representing Appellant stated, or even indicated, that Appellant had himself expressed a desire to his counsel to have the jury assess his punishment.

---

[4]We note that there is nothing in the record indicating that the jury would have assessed a more lenient punishment than the trial court. *See Swinney*, 663 S.W.3d at 90. The trial court stated that it was a former criminal defense attorney, and nothing in the record signified that the trial court had rejected any prior plea agreement, had a reputation for assessing higher punishments, or had otherwise indicated that it would assess a harsher punishment than a jury. However, given the prejudice standard set forth in *Swinney* as it relates to counsel's "deficient performance" that causes a defendant to waive a proceeding he was otherwise entitled to, we address counsel's performance as it relates to Appellant's decision making—the primary focus of the prejudice inquiry in that circumstance—in this case. *Id.*

15

Counsel cannot fail to "carry out the defendant's decision" for the jury to decide punishment when there is no evidence in the record before us that reflects his desire to do so. In this regard, trial counsel stated to the trial court that, "On August 2nd we approached and we discussed [the intent and the trajectory of trial]." A record from this interaction, if any, was not made part of the record.

In addition, appellate counsel filed a motion for new trial and, although a hearing was requested within the motion, counsel did not assert that trial counsel was ineffective for failing to file the punishment election or otherwise. Instead, appellate counsel alleged in the motion that "additional mitigation should have [been] considered by the Court prior to sentencing." *See Hart*, 667 S.W.3d at 777 ("Had the record contained a motion for new trial raising an ineffectiveness claim, counsel would have had an opportunity to explain."). "The right to 'reasonably effective assistance of counsel' does not guarantee errorless counsel, or counsel whose competency is to be judged by hindsight." *Ex parte Kunkle*, 852 S.W.2d 499, 505 (Tex. Crim. App. 1993) (quoting *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983)). We will not judge trial counsel's competency—trial counsel that filed numerous pretrial motions, properly conducted voir dire, made appropriate objections, and put on a defense—by hindsight. A record regarding the prejudice prong at trial, or at the very least, at a motion-for-new-trial hearing, should have been made to fully present this issue for our review.

As we have said, ineffective-assistance-of-counsel claims "must be firmly rooted in the record." *Hart*, 667 S.W.3d 782. Based on this record, however, we cannot say whether Appellant wished for the jury to assess his punishment and that, therefore, trial counsel's error *caused* Appellant to waive a proceeding he was otherwise entitled to. *See Swinney*, 663 S.W.3d at 92 ("[T]he record . . . says nothing

16

about the impact of that bad advice on Appellant's punishment election. There is nothing to show that he relied on the advice, whether other considerations influenced his punishment election, or whether he would have elected the jury for punishment if his attorney had correctly advised him about his probation eligibility."); *Walker*, 794 S.W.2d at 36–37 (Applicant and trial counsel's affidavit established that counsel had informed him "that the trial judge had earned a reputation as being very harsh when assessing punishment. Counsel advised applicant to have the jury set punishment, *and applicant agreed.* . . . [However], counsel failed to effectuate *appellant's decision*.") (emphasis added). Appellant must meet both prongs of the *Strickland* test to prevail on an ineffective-assistance claim. *Lane*, 670 S.W.3d at 671. Here, the record is insufficient to support a claim that he met the second prong.[5]

Based on the totality of the representation, the specific circumstances of this case, and the lack of support in the record before us regarding the second prong of the *Strickland* test, we conclude that Appellant has not shown that he was prejudiced by counsel's deficient performance. We therefore overrule Appellant's second issue.

### Trial Court's Denial of Appellant's Motion to Independently Test Physical Evidence

Next, we address Appellant's first issue in which he contends that the trial court erroneously denied his motion, filed on September 22, 2022, to inspect, examine, and independently test "[t]he alleged controlled substance," "[a]ny drug paraphernalia," and "lab notes, reports or other documentation regarding the State's

---

[5]We do note, however, that counsel may fully develop the record through an application for writ of habeas corpus. In the brief, appellate counsel alternatively requests to resubmit the claim via such an application to "provide an opportunity to conduct a dedicated hearing" on the issue.

17

testing," among other items. The trial court denied the motion at a pretrial hearing held on September 27, 2022, the day before trial began.

We generally review a trial court's ruling on a pre-trial motion for an abuse of discretion. *See Ehrke v. State*, 459 S.W.3d 606, 610 (Tex. Crim. App. 2015); *Ivie v. State*, 407 S.W.3d 305, 314 (Tex. App.—Eastland 2013, pet. ref'd); *see also Jones v. State*, No. 02-21-00214-CR, 2023 WL 3017656, at *5 (Tex. App.—Fort Worth Apr. 20, 2023, no pet.) (mem. op., not designated for publication). But "[t]he right to inspect the alleged controlled substance is absolute—it requires no further showing beyond an initial *timely* request." *Ehrke*, 459 S.W.3d at 611 (emphasis added) (citing CRIM. PROC. art. 28.01 § 2 (West 2006) (motions must be filed at least seven days before a pretrial hearing, "except by permission of the court for good cause shown")); *see also* CRIM. PROC. art. 39.14 (requiring discovery and inspection upon "timely request"). The notice requirements in Article 28.01 of the Code of Criminal Procedure were "'designed to enable the trial judge to dispose of such matters sometime prior to trial to avoid delays after jurors and witnesses have been summoned.'" *Ivie*, 407 S.W.3d at 315 (quoting *Bosley v. State*, 414 S.W.2d 468, 470 (Tex. Crim. App. 1967)).

"Although a trial court presented with a timely request for independent examination of drugs in a possession case has no discretion to deny the request, it has the discretion to forbid the party from raising the issue altogether when the request is untimely." *Id.* ("We conclude that the trial court did not reach the merits of the [discovery] motion because of the belief that it was untimely and that this decision was not an abuse of its discretion.") (quoting *Scott v. State*, 825 S.W.2d 521, 525 (Tex. App.—Dallas 1992, pet. ref'd)). Thus, the inquiry is whether the trial

court reached the merits of Appellant's motion for an independent inspection. *See id.*; *Scott*, 825 S.W.2d at 524.

Here, the trial court heard Appellant's pretrial motions the day before trial. When trial counsel raised the motion for independent testing, the following discussion occurred:

> [DEFENSE COUNSEL]: . . . on the independent testing that was also granted in full . . .
>
> THE COURT: No, the motion for independent testing was not granted in full.
>
> [DEFENSE COUNSEL]: Have we gone over the -- I don't know that we have actually addressed that.
>
> THE COURT: No.
>
> [THE STATE]: We never had a hearing on it.
>
> THE COURT: No. That motion is denied. We don't have time to do that, and I don't think you have a right to that.
>
> [DEFENSE COUNSEL]: Can I get a ruling --
>
> THE COURT: Yes. Denied.
>
> [DEFENSE COUNSEL]: -- and a finding of fact?
>
> THE COURT: Denied. Finding of fact, it is denied. Motion for independent testing is denied.

Trial counsel then asked the trial court for further explanation and findings of fact. In response, the trial court repeated its ruling that the motion is denied and it did not address the matter.

We conclude that the trial court declined to reach the merits of the motion for independent testing, thereby acting within its discretion not to hear an untimely filed

motion. *See Ivie*, 407 S.W.3d at 316. Nothing in the record indicates that Appellant did not receive sufficient notice of the pretrial hearing; therefore, he could have timely requested—the need for independent testing. Moreover, according to Appellant's motion, his drug-possession case was indicted and pending in another district court prior to its consolidation with the indictment in the underlying cause. We are unaware of any request for independent testing being filed in the drug-possession case prior to its reindictment into this related case.

Instead, Appellant filed his motion for independent testing less than one week before the scheduled trial date, and the trial court correctly determined that there was no "time to do that." *See id.* at 315–16; *Scott*, 825 S.W.2d at 524–25. Because the trial court did not abuse its discretion by denying the untimely filed motion, we overrule Appellant's first issue.

### *Restitution*

In Appellant's fourth issue, he contends that the trial court erroneously ordered him to pay restitution to the Texas Department of Public Safety (DPS). The State concedes, and we agree, that Appellant's contention is correct.

We review a challenge to a restitution order for an abuse of discretion. *Cartwright v. State*, 605 S.W.2d 287, 288–89 (Tex. Crim. App. [Panel Op.] 1980). Due process considerations are implicated if the trial court improperly orders restitution. *Burt v. State*, 445 S.W.3d 752, 758 (Tex. Crim. App. 2014).

"[Restitution] may be ordered only to a victim of an offense for which the defendant is charged." *Hanna v. State*, 426 S.W.3d 87, 91 (Tex. Crim. App. 2014); *Keneson v. State*, No. 11-22-00336-CR, 2024 WL 377945, at *1 (Tex. App.—Eastland Feb. 1, 2024, no pet.) (mem. op., not designated for publication); *Goodman v. State*, No. 11-21-00109-CR, 2021 WL 5830719, at *2 (Tex. App.—

20

Eastland Dec. 9, 2021, no pet.) (per curiam) (mem. op., not designated for publication); *Sheridan v. State*, No. 11-19-00303-CR, 2020 WL 1887710, at *2 (Tex. App.—Eastland Apr. 16, 2020, no pet.) (per curiam) (mem. op., not designated for publication); *Sexton v. State*, No. 11-18-00278-CR, 2019 WL 4316791, at *1 (Tex. App.—Eastland Sept. 12, 2019, pet. ref'd) (per curiam) (mem. op., not designated for publication). As such, only a recognized "victim" may receive restitution from a convicted defendant. In that regard, a trial court may order a defendant who is convicted of an offense to pay restitution to either a victim of that offense or to a crime victim's assistance fund; however, a convicted defendant who is sentenced to a term of imprisonment may not be ordered to pay restitution to a law enforcement agency or an agency of the State of Texas, such as DPS. *See* CRIM. PROC. art. 42.037(a); *Hanna*, 426 S.W.3d at 91, 94; *Keneson*, 2024 WL 377945, at *1; *Shircliff v. State*, 654 S.W.3d 788, 793 (Tex. App.—Waco 2022, no pet.); *Sheridan*, 2020 WL 1887710, at *2–3; *Sexton*, 2019 WL 4316791, at *1.

Here, Appellant was sentenced to a term of imprisonment, and the "restitution" ordered by the trial court and assessed against Appellant consisted of a $180 lab fee expense payable to DPS. Because the trial court had no authority to order Appellant to reimburse DPS for this expense, it abused its discretion when it did so. *See* CRIM. PROC. art. 42.037(a); *see also Hanna*, 426 S.W.3d at 91 (DPS fees are not subject to a restitution order); *Keneson*, 2024 WL 377945, at *2 (same); *Ortega v. State*, No. 11-19-00081-CR, 2021 WL 2836799, at *1–2 (Tex. App.—Eastland July 8, 2021, no pet.) (per curiam) (mem. op. on remand, not designated for publication); *Hutson v. State*, No. 11-19-00037-CR, 2021 WL 2836976, at *2 (Tex. App.—Eastland July 8, 2021, no pet.) (per curiam) (mem. op. on remand, not designated for publication); *Sheridan*, 2020 WL 1887710, at *2–3 (the trial court

21

has no authority to assess DPS lab fees as restitution or to order a defendant to reimburse DPS for lab fee expenses when the defendant is sentenced to a term of imprisonment; DPS lab fees are not subject to a restitution order under Article 42.037(a)); *Sexton*, 2019 WL 4316791, at \*1–2 (same). Therefore, we must modify the trial court's judgment on Count Two to delete this improper restitution assessment. *Burt*, 445 S.W.3d at 757–58. Accordingly, we sustain Appellant's fourth issue on appeal.

### *This Court's Ruling*

We affirm the trial court's judgment in Count One. We modify the trial court's judgment on Count Two to delete the restitution assessment of $180 for lab fee expenses that the trial court ordered payable to DPS. As modified, we affirm the trial court's judgment in Count Two. *See* TEX. R. APP. P. 43.2(b).

W. BRUCE WILLIAMS
JUSTICE

May 23, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.